Deupree *et al. vs.* Deupree *et al.*

---

JAMES F. DEUPREE *et al.*, executors, plaintiffs in error, *vs.* LUCY Y. DEUPREE *et al.*, caveators, defendants in error.

(This case was argued at the July Term, 1871, and the decision withheld until January Term, 1872. Chief Justice Lochrane in the meantime resigned, and Justice Warner was appointed to fill the vacancy, and Justice Montgomery was appointed to the vacancy created by the promotion of Chief Justice Warner. Justice McCay did not preside upon the first trial. The case was again argued before a full Bench, at the January Term, 1872.)

1. The marriage of a testator or the birth of a child to him subsequent to the making of a will, in which no provision is made in contemplation of such an event, is, by presumption of law, a revocation of the will, and this presumption cannot be rebutted by any declarations of the testator, whether by parol or in writing, at the time of the marriage, or even by a settlement on the wife, and a renunciation by her of all interest in the estate of the husband, unless the declarations or

provisions be testamentary in their character, and be executed by the testator with the forms and solemnities required for making a will.

2. A paper testamentary in its nature does not require for its due execution, an attesting clause declaring it a will, and reciting its execution according to the terms of the statute, pointing out how wills shall be executed. If it be subscribed by the testator, in the presence of the witnesses, and be attested and subscribed by them in his presence, it is sufficient.

3. If a testamentary paper be proven by the witnesses to have been subscribed by the testator in their presence, and they further state that they signed as witnesses, immediately thereafter, but they are unable, from want of recollection, to state affirmatively whether the testator remained in the room or not whilst they were subscribing, and seven or eight years have elapsed, there is a presumption of law, arising from the fact of attestation, that it was duly attested, and it was error in the Court to charge the jury that this presumption did not arise, unless the attestation clause recited the presence of the testator during the subscription of the witnesses.

4. Where there is an erroneous charge given to the jury a new trial ought to be granted, unless the evidence is so decidedly in favor of the verdict, that the jury must have found the same verdict even if the law had been correctly charged.

Witness cannot be compelled, in civil causes to attend Court out of the county of their residence. (R.)

It is in the power of parties under the direction of the Court to present the original paper propounded as a will to witnesses residing out of the county of the trial, by interrogatories. (R.)

The widow who was a party to a marriage contract with her deceased husband, which, together with another instrument, was subsequently propounded as his will, is a competent witness upon the trial of a caveat to the same, especially when she has barred herself from taking anything from his estate. (R.)

The answer of a witness being full to the material import of an interrogatory is sufficient. (R.) WARNER, Chief Justice, dissenting.

Caveat to will. Revocation. Subseqent marriage. Attestation. Continuance. Before Hon. WILLIAM M. REESE, an Attorney at Law, presiding by consent. Oglethorpe Superior Court. April Term, 1871.

On June 27th, 1853, Lewis J. Deupree having then a wife and two children, executed a paper purporting to be his will. On September 8th, 1859, his wife having in the meantime

died, he executed a codicil to the same.    On May 24th, 1864, he married Lucy Y. Peebles, and in contemplation of said marriage, he and the said Lucy Y., on the day of the marriage, and before the ceremony was solemnized, entered into marriage articles, which provide for the settlement of $10,000 by the said Lewis J. Deupree, upon his intended wife, and for the securing to her sole and separate use her own property.    These articles contained the following provisions: "And the said Lucy Y. Peebles, in consideration of the premises and of the settlement to be made as aforesaid, hereby renounces and forever relinquishes all claim of every sort which she may or might have by reason of said intended marriage, should it take place, upon any other part or portion of the property or estate of the said Lewis J., of every kind whatsoever (now belonging to him or that he may hereafter in anywise acquire) as heiress, distributee, by way of dower, or any other operation of law; also, all right to caveat or invalidate, upon any ground whatever, the existing will of the said Lewis J., and the codicils thereto, or any portion of either—it being understood between the parties to this agreement that said will and codicils shall remain in full force until they are altered, cancelled or destroyed by the said Lewis J., provided, however, that should any child or children be born of said contemplated marriage, and survive the said Lewis J., such child or children shall be entitled to take under said will as if they were expressly named, and receive legacies equal to the provision made therein for the children of the said Lewis J., now living, and subject to like uses and trusts, limitations and conditions."    These articles were signed by both parties, in the presence of three witnesses, and immediately after the execution of the same, the parties were married.    Lewis J. Deupree died in April 1870, leaving his widow, the said Lucy Y., and his three daughters, Mary L. Hunnicutt, Francina Deupree and Lucy G. Deupree, his only heirs-at-law.    Neither the will or the codicil contained any provision in contemplation of said marriage, nor was any

alteration made in the same subsequent to the marriage.  Under this state of facts, the heirs-at-law petitioned the Court of Ordinary of Oglethorpe county to declare the intestacy of said Lewis J. Deupree, and a portion of the executors of said Lewis J., subsequently propounded all the papers heretofore referred to as the last will and testament of said Lewis J., for probate.  An appeal, by consent, was taken to the Superior Court, where the two cases were, by order of the Court and consent of the parties, consolidated and tried together. The probate of said purported will was caveated upon the following grounds:

1st.  Because the said Lewis J. Deupree made no provisions in said will or codicil in contemplation of the marriage of the said Lewis J. with the said Lucy Y., and subsequently to said marriage made no alteration in either of them.

2d.  Because the ante-nuptial agreement between the said Lewis J. and the said Lucy Y. is in all of its parts a contract entered into between said parties in consideration of marriage.

The two cases were submitted to the jury, and a verdict was rendered in favor of caveators against all of said papers as wills, finding that the said Lewis J. died intestate.  When this case was called in the Superior Court, the propounders moved for a continuance and showed for cause that two of the subscribing witnesses to the paper propounded, bearing date May 24th, 1864, to-wit: John P. Atkinson and Cadesman Pope, who reside in the county of Meriwether in said State, had been served with subpœnas, were absent.  They showed further, that the expense of attending Court had been tendered to said witnesses, and that the other subscribing witness, to-wit: William Park, resided in the State of Alabama.  The Court overruled said showing, and propounders excepted.  Propounders then excepted to the answer of Mrs. Dora Atkinson to the third cross-interrogatory as not sufficiently full.  The question and answer are as follows: Q. "Answer if Mrs. Lucy Y. Deupree has not been to see you since the case has commenced, and had a talk with you and

John P. Atkinson, in order to refresh your recollections about these matters, and the order in which they occurred? Could you now say that Mr. and Mrs. Deupree actually left the room within your knowledge before the paper was signed by the witnesses? Did not Miss. Lutie King and Mrs. Deupree come out of the door first? Was the door wide enough for three persons to come out of the room together, and did you not hear Mrs. Deupree say after she got in the passage, 'I suppose you have no further use for me about this matter,' or words to that effect?"  A. "She has been to see us and I have heard her converse on the subject.  I do not think she came to see me for that purpose; Mr. Deupree and Mrs. Peebles left the room before the witnesses did, but I do not know whether or not they left the room before the witnesses signed the instrument.  They all came out about the same time.  The door was not wide enough for three to pass out at once.  I did not hear her make that remark."  The Court overruled the exception, and propounders excepted.  The evidence in reference to whether the witnesses to the marriage articles, executed on May 24th, 1864, signed in the presence of Lewis J. Deupree, was conflicting.  It was admitted that the estate of the testator amounted to some $300,000, and that the Athens real estate which had been conveyed shortly before his decease to his three daughters, was worth some $60,000.  The Court charged the jury as follows:

"GENTLEMEN OF THE JURY:  The propounders, as plaintiffs in this case, allege that the three papers before you, one dated in 1853, one in 1859, and one in 1864, constitute the will of Lewis J. Deupree.  In relation to the execution of wills, (not nuncupative,) the Code declares that they must be signed by a testator of sound mind, freely and voluntarily, in the presence of at least three subscribing witnesses, and that these witnesses must sign in his presence.  Unless all of these requisites are complied with there is no will.  As to the paper bearing date in 1853, defendants concede the same

to have been properly executed. The same concession is made by them as to the codicil executed in 1859. They, the defendants, admit that these papers, executed in 1853 and 1859, would constitute the will of L. J. Deupree but for a subsequent event—his marriage in 1864. Caveators say that Mr. L. J. Deupree married in 1864, a fact admitted by propounders, and, under section 2441 of the Code, these papers, executed in 1853 and 1859, are revoked, and not the will of L. J. Deupree. This section (2441) declares that, in all cases, the marriage of the testator or the birth of a child subsequent to the execution of a will, in which no provision is made in contemplation of such an event, shall be a revocation of the will. Propounders, while admitting the marriage of L. J. Deupree, in 1864, and its legal results, reply to this ground of the caveators, that in 1864, a few moments before his marriage, L. J. Deupree executed a paper, called generally a marriage settlement, which is in some of its clauses testamentary, and that these testamentary clauses do actually make a provision in contemplation of marriage and birth of a child, and that, as a whole, taking the three papers offered for probate, L. J. Deupree's will made a provision in contemplation of marriage, and therefore his marriage in 1864 did not revoke his will. Upon an examination of this instrument, executed in 1864, I am satisfied that the parts thereof claimed by the propounders as testamentary, are so, and do make a provision in contemplation of marriage. I am satisfied that this paper comes up to the requirements of section 2441 of the Code, so far as the nature of its provisions is concerned, and, if properly executed, avoids the effect of marriage. And here I charge you that a writing not executed as our law requires in cases of wills, will not save the papers executed in 1853 and 1859 from the effect of marriage. You will, then, understand me to charge you that this paper, dated in 1864, though it is testamentary in its provisions, and though these provisions do contemplate the event of marriage, must be shown by proof to have been executed by L. J. Deupree, when he was of sound

mind, voluntarily, and that he signed it in the presence of at least three witnesses, and that they signed in his presence. There is no dispute on any of these questions, except as to the last—the subscribing of the three witnesses in L. J. Deupree's presence.   In 33 Georgia Reports, 293, it is declared by our Supreme Court, 'that attesting and subscribing by witnesses in presence of the testator are essential to the validity of a will, and that these must be shown to have been done, else the will shall be held to be void and of no effect.'   It is also said by the Court, on page 293 of 33 Georgia Reports, in same case, 'that it is not necessary for the testator to have actually seen the witnesses subscribe, but it was necessary that they should have subscribed in his presence, and that it must have been done before him, or in his view, so that if he would have looked from his actual position he might have seen the witnesses subscribe.'   Should you be satisfied from the evidence that Mr. Deupree, from his actual position, when the witnesses subscribed the paper dated in 1864, might have seen them subscribe, then this paper is properly executed, and the three papers should be declared to be the last will of L. J. Deupree. But if he could not, from his actual position, have seen the witnesses subscribe it, then it is not properly executed, and your verdict should be against all of the papers. If the subscribing witnesses should not recollect where the testator was when they subscribed, and the attesting clause recites him present at that time, the presumption is that he was so present. If not, and the attesting witnesses appear in Court, and their testimony is that they do not recollect as to the presence of the testator, no such presumption arises. While I am in some doubt as to these propositions, when the subscribing witnesses do not remember where the testator was when they subscribed, still I charge you that the law is as I have stated. Even, however, if the witnesses do not remember distinctly, if you are satisfied, by the testimony of other witnesses and from proof before you of circumstances, that the will was signed by the subscribing witnesses in L. J. Deupree's pres-

ence, then the will should be established, as composed of the papers executed in 1853, 1859 and 1864."

The propounders excepted to, and assigned as error the following rulings of the Court upon the trial:

1st. That the Court erred in overruling the motion to continue, grounded upon the absence of the subscribing witnesses to the paper propounded, bearing date May 24th, 1864, as above stated.

2d. That the Court erred in overruling the exceptions to the answer of Mrs. Dorah Atkinson, as above stated.

3d. That the Court erred in holding Lucy Y. Deupree, the widow of the alleged testator, and who was a party to the paper propounded, bearing date May 24th, 1864, and which had been put in evidence, a competent witness, overruling the objection made by counsel for propounders, when each set of her interrogatories was offered, and allowed both sets of interrogatories to be read in evidence, when it had been shown that the said Lewis J. Deupree, the other party, was dead, and in this the propounders say the Court erred.

4th. Counsel for propounders profered the following written request to the Court to charge: "That every revocation of a will, whether express, implied or resulting, statutory, positive or absolute, was, under the Code of Georgia, a question of intention; and that if the jury were satisfied that, cotemporaneous with the marriage of the said Lewis J. with the said Lucy Y., he executed the paper propounded, bearing date May 24, 1864, with proper formality for a deed, that such evidence will silence the presumption that by his said marriage he intended to revoke his will." Which said request the Court refused to charge, but charged "that the jury could in nowise consider said paper, unless they were satisfied under the evidence that it was executed with all the formality required by law for the execution of a will." And counsel for propounders say that the Court erred, both in refusing said request, and also in giving said charge, immediately above set forth.

5th. Counsel for propounders assign as error the following passages from the charge of the Court: "You will, then, understand me to charge you that this paper, dated in 1864, though it is testamentary in its provisions, and though these provisions do contemplate the event of marriage, must be shown by proof to have been executed by L. J. Deupree, when he was of sound mind, voluntarily, and that he signed in the presence of at least three witnesses, and that they signed in his presence." "But if he could not, from his actual position, have seen he witnesses subscribe it, then it is not properly executed, and your verdict should be against all of the papers;" and say that the Court erred in giving the same.

6th. And counsel for propounders say that in the following charge: "If the subscribing witness should not recollect where the testator was when they subscribed, and the attesting clause recite him present at that time, the legal presumption is that he was present. If not, and the attesting witnesses appear in Court, and their testimony is that they do not recollect as to the presence of the testator at the time of attesting, no such presumption arises. While I am in some doubt as to these propositions, when the subscribing witnesses do not remember where the testator was when they subscribed, still I charge you that the law is as I have stated. Even, however, if the witnesses do not remember distinctly, if you are satisfied by the testimony of other witnesses, and from proof before you of circumstances, that the will was signed by the subscribing witnesses in L. J. Deupree's presence, then the will should be established as composed of the papers executed in 1853, 1859 and 1864," the Court erred, and they assign the whole and each and every part as error.

LINTON STEPHENS; PEEPLES & STEWART; REID & MORTON, for plaintiffs in error.

The propounders excepted, and assign seven errors, which will be severally set forth in the argument following:

1st. The witnesses to the paper of 1864, though subpœnaed, did not appear. Propounders moved for a continuance, which motion was refused. The witnesses resided out of the county; still we say their presence should have been compelled.

"By all the witnesses in existence and within the jurisdiction of the Court *or by proof of their signatures, and that of the testator, the witnesses being dead:* Code, 2389. Code, 3471, as to continuances requiring subpœna of witness residing in county, and Code, 2394, 2397, authorizing examination of witnesses to wills by commission—contra: the first is but a general clause from which this particular case is excepted; the other provides for testimony by commission on all other points than due execution, for Code, 2395, requires filing of the will; it must remain in the office—this is to preserve so important a paper. Code, 3784, requires subscribing witness called but in the therein excepted cases. Act of 1807, Cobb's Digest, 314—the preamble to the 1st section states that there is no law that sufficiently enforces witnesses to wills to prove the same. See Act of 1838, allowing probate in county of witnesses: Cobb's Digest, 285; Code, 2387.

2d. The interrogatories of Mrs. Deupree, the widow, were received, propounders objecting, to prove that her deceased husband was not present when the witnesses signed. The cause of action on trial was whether the will propounded should be set up. To this issue Deupree, by his representatives, was a party, and Mrs. Deupree was also a party against him by actually caveating the will, and Deupree, an original party, was dead. Leaptrot *vs.* Robertson, 37 Georgia, 587; see specially, 589, *ad finem.* See, also, Moore *vs.* Harlan & Hollingsworth, 37 Georgia, 626. "The reason for excluding a party whose opponent is dead is evidently because he cannot be confronted by the other party:" McGehee *vs.* Jones *et al.*, 41 Georgia, 125. Mrs. Deupree carries her contem-

plated husband out of the room swearing he did not stay behind long enough to witness the signing—he was not there to confront her.  She joined as caveatrix.

3d.  The Court charged in the sixth assignment: "If the subscribing witnesses should not recollect where the testator was when they subscribed, and the attesting clause recites them present at that time, the legal presumption is that they were so present.  If not, and the attesting witnesses appear in Court, and their testimony is that they do not recollect as to the presence of the testator at the time of attesting, no such presumption arises."  The attestation clause was "signed, sealed and delivered in the presence of."  Suppose the charge to mean if the attestation clause does not recite the testator's presence at their subscription, and they cannot remember, when testifying, if he was present, no presumption of his presence arises—that was error.  1 Greenleaf's Evidence, section 38, (a) as to presumption in favor of due execution of solemn instruments.  Also, 1 Williams' Executors, 83, as to clause omitting some essential particular, or clause omitted entirely.  The paper was testamentary—it was attested by the three witnesses necessary—all these, taken with the clause, raised a presumption of Deupree's presence, which if not strong should have been given to benefit us as much as it legally could.

The Judge charged further as set forth in this assignment: "If the witnesses do not remember distinctly, if you are satisfied by the testimony of other witnesses, and from proof before you of circumstances, that the will was signed by the subscribing witnesses in L. J. Deupree's presence, then the will should be established as composed of the papers executed in 1853, 1859 and 1864."

1. The subscribing witnesses do not remember distinctly, and he therefore directed their finding improperly against evidence that might warrant a verdict, though not distinct and precise, and against the legal presumption.  2. He also virtually told the jury that they could not set up the will on

the testimony of these witnesses. 3. He intimated an opinion on their evidence. Though it raised the presumption of Deupree's presence at the attestation, still if they could not distinctly remember the fact which the law presumed, their evidence was insufficient. 4. In the seventh assignment the Judge in reply to verbal request of counsel that if Deupree was shown to have been present when witness began to sign, the legal presumption was that he continued present until the signing was finished, said such was, in his view, a presumption of fact. A presumption of fact is a mere argument, but the other must prevail if not rebutted. If Deupree was proven present when the signing of his own paper begun, the law will presume him staying the few seconds longer of the signing, and the Judge should not have said, even impliedly, that the jury could disregard this presumption: See Greenleaf's Ev. sec., 44. 5. The fourth assignment recites the refusal of the following request: " That every revocation of a will, whether express implied, or resulting, statutory, positive, or absolute, was, under the Code of Georgia, a question of intention, and that if the jury were satisfied that contemporaneously with the marriage of the said Lewis J. with the said Lucy Y., he executed the paper propounded bearing date May, 24th, 1864, with the proper formality for a deed, such evidence will silence the presumption that by the said marriage he intended to revoke his will." The Court charged instead, that such paper could not be considered by them unless it had been executed as a will. 1. Code 2434–42 makes but two sorts of revocation, express and resulting. One instance of implied revocation is the execution of a subsequent will inconsistent: Code, 2435. This implied revocation extends only so far as the inconsistency exists: Code, 2439. The doctrine is also applicable to conflict of clauses: Code, 2440. 2. The revocation in question is certainly resulting. It is classed by the legal authors as an implied revocation: See Williams & Jarman. That it comes here by a statute instead of a long-accepted formula, does not change the nature. Last-

Deupree *et al. vs.* Deupree *et al.*

ly, all the instances of revocation given in the above cited sections are put on the same footing in the last: Code, 2442: and a destroyed will was never revived by a codicil: Redfield, 365; Williams, 94.   3. This being a resulting revocation, it is within the words of section 2438 : "In all cases of revocation, the intention to revoke is necessary to make it effectual;" and the two clauses should be read together, thus; "In all cases the marriage of the testator, *with the intention to revoke,* (*animo revocandi*) subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will," just as we must reconcile section 2438 with other clauses apparently as positive. 4. The Act of 1834, as apparent from its title and its body, only worked an *intestacy* in case of death, without alteration ; the Code makes the marriage a *revocation.*   5. There is no such difficulty as has been imagined on the subject of intention ; the intention concurring with the act, characterizes it ; the act cannot be altered in nature by a subsequent change of intention.   The doctrine seems to be this : subsequent marriage being shown, revocation is presumed *prima facie,* just as the same will be presumed when obliteration is shown ; but the presumption is disputable in each case and can be rebutted.   6. Remember the conflict in England ; read 1 Williams' Executors, 158-9 ; also, 4 Kent, 523-4, wherein he takes the strong ground of Lord Mansfield for intention instead of condition.   7. American authorities : Brush *vs.* Wilkins, 4 Johns. Ch., 506 ; Yerby *vs.* Yerby, 3 Call, 334; Wheeler *vs.* Wheeler, 2 Rhode Island, 364.

6. The charge complained of in the fifth assignment expressly excluded from the consideration of the jury, saving the question of its execution as a will, the paper of 1864, though that paper was shown to have been executed as a deed. The same was virtually done by the Court as recited in the fourth assignment.   This cotemporaneous settlement really altered the will.   The object of the Act of 1834 was to modify: Brush *vs.* Wilkins, which had ruled that birth and marriage

must concur to revoke and make either event a revocation. This was the great object. This Act, if not superseded, is still of force. (The heirs took the remedy given by it.) *Prima facie,* the Code merely intends to repeat it substantially, save that the Code makes marriage a revocation. (See Mr. Justice Cowen, quoted by Kent, first volume, side, 468, note (*d*)—read all.) Suppose Deupree had made a new will, bequeathing his wife $500 ; this would be an admitted alteration ; but, when he passed to her $10,000 *in præsenti,* irrevocably, taking it forever out of the residuum, there is a quibble, and he has not altered his will. See Redfield, 294-5, and the comment on Kenebel *vs.* Scrafton, 2 East. 530, in the note citing Earl Ilchester, 7 Vesey, 348. In this case, a devise of land, the Chancellor says: "That from the rule originally adopted and now settled, whether to be considered a rule of law or a presumption, whether going upon the intention or an implied condition," etc., no revocation. (See third marginal note of reporter.) The Chief Justice and Master of Rolls agreed. Read the opinion of the Chancellor. The rule, whether it be one of intention or of absolute law, was never held to be applicable in any case where the revocation could not confer any benefit on the after-married wife or after-born children : 1 Jarman, 110 ; Sheath *vs.* York, 1 Vesey & Beames, 390 ; Brush *vs.* Wilkins.

R. Toombs, for the defendants. First Assignment: That the Court erred in overruling the motion to continue the case, founded on the absence of the subscribing witnesses. This ruling was not error. The witnesses did not live in the county where the issue was tried, but were admitted to be residents of other counties, and one of them resided out of the State. Those living out of the county could not be compelled to attend in person : Code, section 3788. Applications for continuance must show that the witness lives in the county : Code, section 3471. Interrogatories are allowed on probate of wills : Code, sections 2394, 3821–3. And the in-

Deupree *et al. vs.* Deupree *et al.*

terrogatories of the absent witnesses were in Court and read by propounders : Code, section 3480.

Second Assignment. That the Court erred in not sustaining the objections to the answer of Mrs. Atkinson to third cross-interrogatory. Reply—no error. Answer full and sufficient. See bill of exceptions, pages 23 and 26, and Mott *vs.* Hall, Maer & Company, 41 Georgia, 117; 8th Georgia, 626, and objection immaterial if good.

Third Assignment. That the Court erred in overruling objection to the testimony of Lucy Y. Deupree, because she was a party to the marriage articles, dated 24th May, 1864, and which was one of the papers offered for probate, in part, as a will, it having been shown that Lewis J. Deupree, the other party to said articles was dead.

We submit that Lucy Y. Deupree was a good witness under the Act of 1866 : Code, section 3798, in this issue of *Devisavit vel non:* 1st. Because she is not within the exception. 2d. *The contract is not sued on.* 3d. She is not called on to testify *in her own favor.* Her interest in the contract, (if any,) was not in issue : See 36 Georgia, 520; 37th, 624; 38th, 108. No objection having been made as to costs, she was a good witness at common law : Worrell *vs.* Jones. 1 Greenleaf, sections 337, 338, and note to 337, section 254—1, Greenleaf, 342, when judgment cannot issue against a party.

Fourth Assignment. This assignment rests on the single ground that the marriage articles entered into before the last marriage, on the 24th May, 1864, executed with the formalities of a deed *only,* and not " with all the formalities required for a will," etc., but " the presumption that by his said marriage L. J. Deupree intended to revoke his will." We will reply: 1st. That by the provisions of the Act of 1834, under which defendants in error filed their petition praying judgment of intestacy as to the estate of said Lewis J., if this will of 1853-'59 was not *revoked* after the marriage of the parties, 24th of May, 1864, it is void, and an intestacy must be declared under the said Act of 19th December, 1834 : See Cobb's Digest,

367.   This statute enacts that, "in all cases when a person, after having made a will, shall marry, (like provision for children omitted,) and no provision shall be made for the wife after marriage, *in said will,* and shall depart this life without revoking said will or altering it subsequent to said marriage, the proper Ordinary shall pass an order declaring such person died intestate." Here is marriage after the will of 1853–'59.   Here is "no provision" *in said will* for the wife. Here is no alteration *in said will* subsequent to said marriage, and plaintiffs in error say, "no revocation." What follows ? This law says, intestacy—Statute of Distribution.   In this view, rebutting intention to revoke does not help plaintiffs in error.   2d. We reply: That this will of 1853–'59 is also void under section 2441 of the Code, because it declares that "in all cases the marriage of the testator, (or the birth of a child to him,) subsequent to the making of a will *in which* no provision is made in contemplation of such an event, *shall be* a revocation of the will.   Under this statute we have will, subsequent marriage of testator, no provision *in said will* in contemplation of such event, therefore *revocation*—revocation by command of the law—and this and the next following section of the Code, 2442, in perfect harmony therewith, and therefore to be considered to contain the last expression of the legislative will on this branch of the law of wills.

To the plain requirements of these two statutes the plaintiffs in error oppose : 1st. The marriage articles, executed 24th May, 1864, purporting to make provision for the wife and after-born children, if any; and, 2d, section 2438 of the Code.   To the first we reply, that both the statutes, (Act of 1834 and section 2441 of the Code,) require the provision for the wife and child to be made *in the will,* and not outside of it, or in any other manner whatever, and that there is no dispensing power lodged in the hands of testators by section 2438 of the Code, or elsewhere, to amend the plain provisions of these two Acts.

This Court has given a clear and accurate exposition of

Deupree *et al. vs.* Deupree *et al.*

this provision in the Act of 1834, in Holliman *et al., vs.* Copeland and wife, 10 Georgia, 79, and the point now under consideration being identically the same in both statutes, the decision equally applies to section 2441 Code, also to 2 Greenleaf's Evidence, section 684 and note; Bibb *vs.* Thomas; 2 H. Black, 1043; 1 Jarman on Wills, 106, 107, 108, 109, 110, 111, 112; 13 Williams' Executors, 165, 163: See 1 Williams' Executors, on point of time of intention, 162. For review of the whole doctrine in England, see Marston *vs.* Doe, *ex dem.*, Fox, 8 ; Adolphus & Ellis, 14 (35 Common Law, 343.) If the statutes of 1834 and section 2441 of our Code needed further interpretation on these points than their own explicit language and decision of our own Supreme Court, it can be abundantly furnished by referring to that cardinal rule of construction, the old law, the mischief and the remedy. The principle that marriage and the birth of a child after the execution of a will, under any circumstances, revoked it, was not provided for by the Statute of Frauds but were borrowed from the civil law, and became one of the most confused and perplexing branch of English jurisprudence, at least until the great case of Marston *vs.* Doe, *ex dem.*, Fox. What cases came within the rule, whether the rule was one of presumed intention to revoke by the testator, subject to be rebutted by extrinsic evidence of a contrary intention, or a rule of law which operated without regard to the intentions of the testator, whether, if it was a question of intention, that intention could be gathered only from intrinsic evidence, or if extrinsic, the intention at the time of making the will, or some subsequent intention, was the test of the application of the rule; whether marriage alone, or marriage and the birth of a child, was necessary to bring the case within the rule, whether the rule applied in the event of the death of the child before the testator, or in the event that the issue had other provision, by descent, by marriage settlement or otherwise; whether or not the rule would operate if its application did not benefit the after-born child and in-

jure children by a former marriage; whether it applied to
a single man with children by a former marriage. These,
with various other vexed questions, besides the conflicts of
the decisions between the Common Law and Ecclesiastical
Courts, called loudly for legislative intervention. The Act
of 1834, and the section, 2441, of our Code were the responses
to that call. Nearly all, and perhaps all, the States of the
Union, where the common law prevailed, as well as the Par-
liament of Great Britain, felt the same necessity for legisla-
ting on the subject, and have done so. Our Acts made it the
marriage or the birth of issue, without provision *in the will* for
the event, *ipso facto*, an annulment of the will. The plain-
tiffs in error invite you, by forced construction, to shut your
eyes to the plain language and obvious purposes of these Acts,
and again to plunge into and lose ourselves in the endless
mazes from which we have happily escaped.

But it is insisted by plaintiffs in error that the 2441st sec-
tion of the Code repeals, changes, or alters the Act of 1834.
Suppose this be true; we stand upon the 2441st section of the
Code, and have the same great facts: Will, subsequent mar-
riage, no provision for it *in the will, revocation.*

This proves the Acts not inconsistent. To escape the Act of
1834 there must be *revocation*, or alteration; to escape the
Code, there must be *no revocation*. Each seems to provide
for a different state of facts, and, therefore, no conflict and no
repeal. These conclusions are so clear that plaintiff admits,
by his defense, that he must look elsewhere to escape their
consequences; and, therefore, he says, for further plea and
answer, that section 2438 of the Code modifies and controls
the intepretation, both of the Act of 1834 and of section 2441
of the Code. This section, 2438, is not put forward as a
modest equal of other laws, *in pari materia*, to be construed
together in order to arrive at the meaning of the Legislature;
but as an Aaron's rod, to swallow up all other rods. The
intention of the Legislature, when ascertained by fixed rules
of construction, is the life of the statute; the rule by which

the citizen shall govern his conduct; it is the law to which he must conform, and which he must obey. The *intention* of testators, in all cases, is the polar-star in the construction of wills—which shall govern, when not inconsistent with a rule of law. The intention of contracting parties, in all cases of contracts, likewise, shall be the law of contracts, unless it conflicts with a rule of law; "and in all cases of revocation, the intention to revoke is necessary to make it effectual. This clause, like all the rest, has no other limitation but a rule of law, and the section is its own expositor; for the next and only remaining clause in the section gives the exposition, to-wit: "An express claim of revocation will not operate upon a testamentary paper when it is manifest that such was not the intention." See section 2434 to section 2438 for further illustrations of the principle. All these affirm nothing but the rule of the common law. Sir H. Jenner Faust, in Marston *vs.* Fox, says, at common law, "intention is the principle of *factum* and of revocation. It is the principle of revocation, whether it be direct by act or implied by circumstances, the animus *testandi* or *revocandi* is the governing principle." Quoted in Williams on Executors, page 158, and note. Revocation by act of the party is an act of the mind demonstrated by some outward and visible sign, etc.: 1 Greenleaf, 573. The grand and only sensible rule is, that a testator's intentions designate and fix the character of his own act; while the intention of the Legislature as to this Act, when thus ascertained, is the law: equally the law in the making, the expounding, the execution and revocation of wills. Intention governs contracts. Code, 2713, 2679, 2689 and wills 2360.

But if the interpretation claimed by plaintiffs in error is to govern, at what time shall this intention be manifested? We say at the execution of the will, and not after: 10 Georgia, 79; Marston *vs.* Doe, *ex dem.*, Fox; Israel *vs.* Rodan, 2 Moore's Privy Counsel; 2 Greenleaf, 684 and note. Also, if plaintiffs in error's interpretation is to govern, by what evi-

dence shall the intention be proved? We say none but evidence which will amount to republication: Marston *vs.* Fox, *supra,* Israel *vs.* Rodan, *supra;* 2 Greenleaf, 684 and note; 1 Jarman on Wills, 109.

This brings us to the fifth and sixth assignments, which, being substantially the same, will be argued together. They stand solely, in the charge of the Court, on section 2442 of the Code upon the subject of republication. Assuming, for the purposes of this argument, that a republication, under this section, would be a full reply to the Act of 1834 and section 2441, we say that the marriage articles, whether deed or will, "were not executed with all the formalities required for a will," and, therefore, cannot operate, either as a will or as a republication of a will; because, we affirm that the law requires a will to be signed by the witnesses in the presence of the testator: Statute of Frauds, Cobb's Digest, 1137; Code, sections 2379, 2442; Robertson & Wood *vs.* King, 6 Georgia, 539; Brooks *vs.* Duffie, 23 Georgia, 441; Reed *vs.* Robertson, 26 Georgia, 294; Lamb *vs.* Girtman, 33 Georgia, 293. The charge complained of in the sixth assignment was good law, but too good for plaintiff's case.

J. D. MATHEWS, for defendants. In the bill of exceptions filed by the executors, there are seven assignments of error:

The first Assignment: Court erred in overruling motion to continue on the ground that two witnesses to the marriage contract, subpœnaed and living in Meriwether county, were absent. Reply: No error here. As to law of continuance, see Code, section 3471; as to law for taking testimony of witnesses residing out of county, see sections 2394 and 3821. Besides, these absent witnesses were fully examined on direct and cross-interrogatories, and their testimony was read on the trial. Again, said contract not being testamentary in any part, was matter irrelevant to the issue: See, also, Code, section 3788.

Second Assignment: Court erred in admitting the answer

of Mrs. Dorah Atkinson to third cross-interrogatory, objected to because not full.   This is simply a mistake; interrogatory is fully answered.

Third Assignment: Court erred in holding Mrs. Lucy Y. Deupree a competent witness in the issue on the execution of the paper propounded, bearing date May 24th, 1864, she being a party to the same, and Lewis J. Deupree, the other party thereto being dead.   Reply: Said paper was pleaded by the executors both as a contract and as a testamentary paper; Mrs. Deupree was examined as a witness to disprove its proper execution as a testamentary paper only.   She was no party to said paper considered as testamentary; L. J. Deupree, the testator, was the only party thereto when so considered.   Mrs. Deupree proved the proper execution of said paper considered as a contract.   She was therefore a competent witness under Code, section 3798.   Besides, said paper considered as a contract, was irrelevant: 1 Greenleaf, 338; Castello *vs.* Castello, 41 Georgia; 40 Georgia, 150, 490.

Fourth Assignment.   Court erred in refusing to charge as requested, that every revocation of a will under the Code of Georgia is a question of intention; and if the jury believed, the marriage contract was properly executed, as a deed, then such contract rebutted the presumption that L. J. Deupree, the testator, intended by his marriage with the said Lucy Y. to revoke his will; and in charging that the jury could not consider said paper unless executed with the formalities of a will.   Reply: Court was right.   Section 2438 of the Code, which says, "intention to revoke is necessary to make it effectual," does not qualify section 2441, which puts the revocation there provided for on *events* or *circumstances*, as specified, and not on the intention of the testator to revoke, and make the revocation independent of the act or intention of the testator.   These two sections being placed in the same "Article," and under the same head of "Revocation," does not make the former qualify the latter; the "classifications of the Code are not law, nor are they at all accurate:" 39 Georgia, 406–7.

There was no such qualification of the Act of 1834 : Cobb's Digest, 347; 10 Georgia, 81–2. What the Code calls express, resulting and implied revocations were all express revocations under Statute of Frauds, as distinguished from implied at common law: Greenleaf, 2d volume, paragraphs 680, 684. That Act is not changed in this particular by section 2441. Rule for construing Code: It does not change the law "except where it plainly does so :" 38 Georgia, 509. The common law, as adopted from the Civil Code, put this class of revocations on implied intention to revoke, where it stood, with some doubts expressed as to the true principle of this class of cases, till the case of Marston *vs.* Doe *ex dem.*, Fox, 35 Common Law Reports, 303, which held that the true principle of revocation was not implied intention to revoke, as formerly held, but tacit condition annexed to the right to make a will. See, also, Israel *vs.* Rodan, 2 Moore, P. C. C., 51, and 1 Jarman on Wills, top page, 109, and note; Williams on Executors, 1st volume, top pages 164–5, 168, 172–3–4. See "Revocation" Library Edition. The new Statute of Wills of 1838 forever settled the controversy in England, by putting this class of revocations on the *event of marriage* alone *subsequent* to the date of the will, independent of the intention of the testator. Williams on Executors, 1st volume, top pages 174–5; Jarman on Wills, 1st volume, 113–4. The Act of 1834 and section 2441 of the Code, settled the controversy in Georgia by putting the revocation on the *event* of *after* marriage or *birth* unprovided for in the will, without regard to the intention or act of the testator. Both the provision and the mode of its conveyance are declared; both are the objects of the statute, and both are fixed by it. The provision must be *in the will*, not out of it. Thus the great source of controversy arising under the common law from implied intention, or from the amount, character or mode of the provision, is cut off by our statute. The language of said Act is, if " no *provision* shall be made *in said will*," etc.; and the la g⸴⸴ge of said section is, " a *will in which* no *pro-*

Deupree *et al. vs.* Deupree *et al.*  ·

*vision* is made," etc.   There is no ambiguity in these words, which are of common use, nor in the Act or section construed with reference to these words taken in their plain, obvious, ordinary signification, and they must be so taken and enforced   Code, section 4; 1 Kent's Commentary, 461–2; 1 Kelly, 171; 3 Kelly, 152–3–4–5–6 ; 10 Georgia, 70; 10 Georgia, 81–2; 41 Georgia, 58; 17 Georgia, 458; 18 Georgia, 134; Sturges *vs.* Crowninshield, 4 Wheaton, 202; 4 McL., 465 ; 5 McL., 178 ; Devereaux Circuit Court Reports, 158; Brightly's Federal Digest, page 816, number 63.   See review of American Statutes and authorities in note to Williams on Executors, 1st volume, top pages 170–1–2—title, " Revocation,"—Library Edition.   South Carolina, Louisiana, Connecticut and most of the other American States have enacted laws putting this class of revocations on *event*, independently of the act or intention of the testator ; the Statutes of Connecticut and Pensylvania, and some other States, require the provision in contemplation of marriage to be in the will as our statute requires ; that of New York requires it to be by will or settlement.   See specially, Statutes of South Carolina, volume 5— 1786 to 1814—page 107, section 10 ; Revised Code of North Carolina, page 611, section 23 ; Revised Statutes of Connecticut, 1849, pages 346–7, section 6; Revised Statutes of Indiana, volume 2, 1852, page 311, section 3; West Virginia Code, 1868, page 480, section 6 ; Revised Statutes of Maine, 1857, page 453, section 8 ; Revised Statutes of Rhode Island, page 358, section 10.

Fifth Assignment:   Court erred in charging the jury that though the marriage contract was testamentary in some of its provisions, and contemplated the event of marriage, yet that it could not prevent the revocation unless executed with the formalities of a will, and that testator must have been able to see, from his actual position, the subscribing witnesses sign the same.   As to witnesses signing in presence of testator, see 6 Georgia, 539; 26 Georgia, 625; 33 Georgia, 293. This charge was given with reference to the marriage con-

tract as it was pleaded by the executors, as herein before stated. See reply to fourth assignment of error.

Sixth Assignment. Court erred in charging the jury that, if the attesting clause to a will recites the presence of the testator when the subscribing witnesses signed the same, the legal presumption is that he was so present, though they should not be able to remember the fact when called as witnesses to prove the execution; but if the attesting clause does not so recite, no such presumption arises.

Reply: As the attesting clause in this case contains no such recital, the first part of the charge was irrelevant and harmless, though it erred in principle in favor of the executors. The latter part of the charge was correct in fact. The true rule of law is this: where the witnesses to a will, whether there be an attesting clause or not, when called cannot remember the facts of the execution, their signatures may be proved, as where they are dead, or abroad, and the whole question as to the proper execution submitted to the jury, as questions of fact, under all the circumstances of the case. This was done in this case: Phillips on Evidence, 3d volume, 450–1; 19 Johns, 386.

1. The verdict was according to the law and the evidence in the case, and must stand, even though the Court may have erred.

2. Court erred against caveators in holding that the marriage contract was testamentary in some of its provisions; whereas, it is not ambulatory in any part, as a will is during the life of testator, but is binding and irrevocable in all its parts, which make a provision in contemplation of marriage; and made, also, on a valuable consideration. There is no stipulation in it binding on Lewis J. Deupree which he could have changed or disregarded; and there is nothing in said instrument which makes a provision in contemplation of marriage or birth, but his own binding stipulations: Code, section 2434. "In order to make a paper testamentary, no power, right, interest or estate must pass from the donor to

the donee during life time of donor :" Cone's opinion, 3 Kelly 172.

3. If the marriage contract was executed as a will it could not be a republication of the will, for the will was not revoked when the contract was made. There is no such thing as the republication of an unrevoked will : Code, section 2442; Williams on Executors, 1st volume, top of page, 278, title, republication.

McCAY, Judge.

Whether the English rule, making the marriage of a testator and the birth of a child to him, a revocation of a previous will, under certain circumstances, was based upon a presumed intention of revocation, or whether it was based upon an implied condition attached to the will itself, is not, in the view I take of the great question in this case, material to be discussed. In either view of it, that rule was founded in the desire of the Courts that the wife and child should be provided for, and, in all the cases, the fact of provision or no provision in some way of a substantial character, was the pivot on which the result turned. In my judgment, the question under our Code turns upon entirely a different idea, and the reasonings and analogies of the English Judges are entirely inapplicable to it. Our Code, section 2441, is as follows: "In all cases, the marriage of a testator or the birth of a child to him, subsequent to the making of a will, in which no provision is made in contemplation of such · an event, shall be a revocation of the will."

The revocation is, by these words, made to turn, not upon any provision made *for* the wife or child, but upon whether the testator, *by his will,* has made a provision *for such an event.* If, by his will he has done so, the will is not revoked; if he has not, it is revoked. It is immaterial whether this provision for the *event* is a provision for the benefit of the wife or child or not; it is enough if it is for the event. *If the provisions of the will* meet the requirements of the statute, it

is not revoked; if *they* do not, it is revoked. Whether the wife or child is provided for in some other way has *nothing* to do with it; the law, by its express, positive terms, makes it turn upon the provisions of the will.

The only questions to be asked are: 1st, Was the marriage or birth subsequent to the making of the will? 2d, Does the will make a provision for the *event?* If the first question must be answered in the affirmative and the second in the negative, the will must stand revoked, unless the Court has power to say and does say that it will alter or modify the law to meet a case that it may think a hard one.

It is pretty evident that Mr. Deupree did not intend to revoke his will by his marriage; but the difficulty is, (supposing this paper of 1853 to be his *last* will,) he has not expressed that want of intent in the legal way, to-wit: he has not, *by his will,* made a provision in contemplation of the *event.* The law has fixed that way and that way only, as the means by which such a want of intent shall be manifested; and the Courts have no more power to say he may do this in any other way than they have to say he may show his intent to make a will in some other way than in the way prescribed. Exactly such a fact, and exactly such a will as this section of the Code provides for here, exist. It is, in my judgment, therefore, revoked. But, if Mr. Deupree, in 1864, made an addition to his will, confirming it and making a provision *for the event* of his marriage, then, as this will consists of both these papers, his will is not revoked by his marriage.

I agree with the Court below that the paper executed in 1864 is testamentary in some of its provisions. It undertakes to provide for the disposition of certain of his property at his death, and it in express terms reaffirms his will made in 1853, by declaring that any children to be born to him shall take under said will, etc. And if that paper was executed as a will, then I am clear his will, his whole will—the paper of 1853, and the paper of 1864—was not revoked by his marriage. Not because the wife is provided for, but be-

cause Mr. Deupree has, in the legal way, declared his intention not to revoke his will, to-wit: by making provision *in it* in contemplation of the event of his marriage. The legal execution of this paper was a question of fact for the jury, under the law. Under the evidence it was, without doubt, signed and .witnessed by three witnesses, who subscribed their names thereto as witnesses. The only serious question on the trial, on this branch of the subject, was whether the witnesses signed the paper in the presence of Mr. Deupree. It was contended on the trial, by one side, that Mr. Deupree was present, and by the other that he was not; on this point there was a great deal of evidence.

It is contended that the Judge, in his charge to the jury, gave them an erroneous instruction in a matter material to the determination of this point. It was said that, as the witnesses all testified to the signature of the testator, and to their own signatures, and were unable, in consequence of the lapse of time, to state affirmatively that he was present when they signed, or that he was not present, there was a presumption of law, from the fact of attestation, that the paper was duly attested. That is, that it was attested as the law requires such papers to be attested. The Court charged the jury that such was the law, provided the *attestation clause* stated or recited the presence of the testator during the signing by the witnesses; but if the attestation clause did not so recite, no such presumption arises, even though the witnesses fail to remember affirmatively the fact of the presence or the absence of the testator. My brother Montgomery and myself think the Judge erred in this charge.

The attestation clause is not a necessary part of the will. A will is good, if properly proven, without any such clause: Redfield on Wills, 1st volume, 238 ; Williams on Executors, 83. Our Code declares that there is no particular form prescribed for a will : Section 2360. It must be signed and witnessed as the law requires, and that is all. There is no requirement that there shall be any attestation clause—much

less that that clause shall state and certify to all the necessary requirements : Code, section 2380. Whether a paper is a will or not depends on its contents, and not on what it is called, or considered to be, by either the witnesses or the maker of it : Code, section 2360. There is no question as to the general rule, that, on the death of the witnesses, or on the failure of their memory, the proof of the fact of execution begets a presumption that all the details of the fact were such as the law requires : 1 Greenleaf's Ev., section 38 (*a*) ; 1 Redfield on Wills, 237, 238, 239. And the positions laid down by these authors are well supported by the authorities : Croft *vs.* Parkhurst, 2 Strange's Reports, 1109 ; Heard *vs.* Joiner, 2 Comyn, 531 ; Clark *vs.* Donnorant, 10 Leigh, 22 ; Fatheree and wife *vs.* Lawrence, 33 Mississippi, 622.

These cases establish, also, that this presumption does not depend on the recitals in the attestation clause. The case in Mississippi was a case of a will, and the paper had no attestation clause, except the word " test ; " and the Virginia case was, as is the case at bar, a paper claiming to be a will, with an attesting clause, like this : "Signed, sealed and delivered." It is clear to me, therefore, that it was error in the Court to say this presumption did not arise, unless the attesting clause stated the presence of the testator. In 2 Redfield on Wills, 35, it is said and even where there is no attestation clause, or it is defective, there still remains the presumption that all which appears upon the paper occurred in the order stated, and as the law requires it shall be done, * * * according to the maxim, *omnia praesumuntur site et solemniter esse acta donec probatur in contrarium.*

There are some cases of wills executed under powers, prescribing certain forms, when it has been held that the proof must show that the forms have been complied with ; and even though the witnesses be dead, or cannot remember, the presumption of compliance does not arise, unless the will itself or the attestation clause so states : 1 Redfield, 238, 239, But I have not found a case of a will, made under the stat-

ute, where it has been held that the presumption arising from the fact of attestation is made to *depend* on the recitals in the will, or the attestation clause. Some of the cases say the presumption is. stronger, if the fact be stated, but it exists even if there be no attestation clause, or if it be imperfect. See, also, Dean *vs.* Dean, 27 Vt. ; Elhat *vs.* Elhat, 10 Allen ; Lawrence *vs.* Norton, 45 Barbour.

As a matter of course, the presumption is stronger or weaker, according to any material facts connected with the case, and, if it was recited, this would strengthen it. But it is a wise rule of law that such a presumption should exist. How many wills do not come up for probate, until many years after the execution of them! Sometimes, the witnesses can only recognize their own hand-writing; sometimes they only remember the fact that the testator signed, and perhaps only that they signed. Who was present and all the other details, have passed from memory. To say that under such circumstances the will is not to be probated, would be a death blow to wills.

It is said, however, that the witnesses in the case at bar do not fail to remember, and that even if they do, there is such an abundance of evidence that the testator was not present as to have *required* the verdict against the propounders, had the law been given rightly. As this case is to be tried over again, and it is not fair to either party for this Court to discuss the *weight* of the evidence, I will only say, that for my part, I think there is evidence to justify a verdict either way, and that, in my judgment, the witnesses to the *will* do fail to *remember* what was the real truth of the case. The *inference* drawn by two of the witnesses from certain facts which they do remember, is not evidence. It is only opinion. It is not rememberance, but inference, which it was for the jury to infer or not, from the facts stated. The recollection of a witness, though it may be indistinct, is evidence for what it is worth, but his opinion, entertained now as an inference from certain facts which he does remember, is

not evidence. The presence or absence of the testator is a matter of fact, and is not to be proven by opinions, even though the facts be stated. I do not think either of the witnesses to the will does state as a fact that the testator was not present at the time they signed. One of the witnesses says he was present when he took the pen to sign, but all the rest is merely want of any recollection of either seeing him or not seeing him. As to the other evidence, as I have said, I do not think it fair to discuss it in detail. I only say that if the jury had been told there was a presumption of the presence of the testator at the time of the witnesses' signature, if they failed to remember the truth of either his presence or absence, it is possible they might have come to a different conclusion. Had this charge been given—I do not say the jury ought to have found one way or the other—I only say that in my judgment, a verdict in favor of his presence would not have come among that class of verdicts which this Court will declare illegal, and set aside. The evidence would not have demanded the verdict. It would not have been illegal for the jury to set up this paper as a will. Upon the other points made we are all agreed.

The witnesses cannot, under our law, be compelled to go out of their county : Code, 3788, 3471, 2394, 3821–3. And it was in the power of the parties, under the direction of the Court, to present the original paper to the witnesses by interrogatories. Nor was the Court in error in permitting Mrs. Deupree to be sworn. So far as this paper is a will, it is not a contract with her, nor has she any interest in it as such, since she has bound herself not to take anything from his estate. The answer of Mrs. Atkinson is, in substance, a reply to the natural import of the question ; at any rate, if it fails, it is in very immaterial matters.

Judgment reversed.

Deupree *et al. vs.* Deupree *et al.*

MONTGOMERY, Judge, concurring.

Concurring, as I do, in the opinion of the Court, as delivered by Justice McCAY, except upon one point, I only deem it necessary to give the reasons for my dissent on that, contenting myself with a general approval of his opinion upon the remaining points in the case.

1. After much fluctuation in the English Courts, the rule, as finally settled, applicable to all wills made prior to 1838, (when the Statute of Wills was passed,) may be thus stated: The law attaches a tacit condition to all wills, that if the testator marry and have issue born of the marriage, subsequent to the making of his will, the will is revoked, unless provision is made in the will, *or otherwise*, for such issue, and if he devise only a portion of his estate, the condition does not attach. The following authorities, I think, establish the rule as above laid down: *Ex parte* Earl of Ilchester, 7 Vesey, jr., 348; Havens *vs.* Van Denburgh, 1 Denio, 27; Kenebal *vs.* Scrafton, 2 East., 530; 1 Redfield on Wills, 294–5; Brady *vs.* Cubit, 1 Doug., 31; Marston *vs.* Fox, 8 Adolph. and Ellis, 14; (35 E. C. L. R., 326;) see Brush *vs.* Wilkins, 4 Johns., 507. It will be seen, by reference to the foregoing authorities, that unless the *whole* property of the testator is devised, the will is not revoked; that if provision is made for future issue by marriage settlement, the will stands; that the tacit condition does not operate, unless he "leaves no provision for any child of the marriage," in the language of the Court, in Marston *vs.* Fox. Not that he must leave such provision in the will—an examination of the context shews that the Court means, that where property is not embraced in the will, out of which a suitable provision exists for the future issue, then, no revocation. A careful examination of this case of Marston *vs.* Fox, on which the defendants in error mainly rest their case, shews that the Court was very guarded in laying down the rule, so as not to overrule any preceding cases, except those which rested solely on the prin-

ciple enunciated by Lord Mansfield, in Brady *vs.* Cubit, that revocation or not, by subsequent marriage and issue, was a question of intention on the part of the testator, and might be rebutted by evidence. In the case, then, before the Court, parol evidence was sought to be introduced for that purpose; and this was rejected on an additional principle, to-wit: that to admit it for the purpose of establishing the will, necessarily involved its admission in rebuttal; and if admitted in rebuttal, it could be admitted in chief, and this would be contrary to the Statute of Frauds. The Chief Justice, in delivering the opinion of the Court, says, "It is a question whether such revocation shall be allowed to depend upon evidence of intention—that is, upon evidence of which parol declarations of testator may confessedly form a part, whilst the Statute of Frauds has anxiously and carefully excluded evidence of that nature, with respect both to the original making and the revoking of wills of land." See argument of Sir W. W. Follet, in Marston *vs.* Fox.

The revocation in Marston *vs.* Fox was placed upon the ground that there was no provision for the after-born child, either in the will or out of it. It may be added, that in Sheath *vs.* York, 1 Vesey & Beam, 390–1, it is decided that the revocation must inure to the benefit of the after-born child; otherwise, the will must stand. If this be law unrepealed, it applies to the present case, and would prevent the revocation. I, however, doubt the correctness of the decision, even at common law. If the principle be true, the death of the child, whose birth revoked the will in the life-time of the testator, would operate as a republication. If, then, the common law be as I have stated it, to-wit: that the will is not revoked when the after-born issue is provided for, either in the will or out of it, the next question for consideration is, to what extent have our statutes modified the common law?

2. The only Act of the Legislature of Georgia upon this subject prior to the Code, is the Act of December 19th, 1834.

This Act grew out of the contest in Richmond county, shortly before its passage, over the will of one Cormick, who made a will and afterwards married and had issue. The propounders and caveators were represented respectively by John Forsyth and Richard H. Wilde, both lawyers of high reputation. Both counsel conceded that the issue was one solely of intention. The idea that a tacit condition of revocation was annexed to the will by operation of law, under the facts, seems not to have occurred to either counsel as being the law of Georgia at that time. It will be remembered that the case of Marston and Fox was not decided until 1844—ten or twelve years after. Cormick's will was set aside. The result of the case, then, could have furnished to the Legislature no reason for altering the law from a presumption of intention to revoke to one of tacit condition of revocation. And I am informed by a gentleman of high position at the bar, who heard the case tried and is familiar with the history of the Act, that the sole object of its framers was to alter the common law to the extent of making marriage *or* birth a presumptive revocation, where there was no provision for the future wife or child, and to this extent only. Be this as it may, keeping in view the old law, the mischief and the remedy, and looking to the reason and spirit of the statute, it seems to me to alter the common law in but three particulars: 1st. By making marriage *or* birth of issue a revocation, unless the after-married wife or after-born children are provided for. It is immaterial, for the purposes of the present case, whether this revocation was by tacit condition or presumptive intention. 2d. A fair construction of the Act would seem to require a revocation, even where the will disposed of only a part of the testator's estate. 3d. The marriage or birth did not of itself revoke the will, but the Court of Ordinary was required to pass an order declaring an intestacy. It is true, the *words* of the Act require the provision to be made in the will. I will consider that in its order. It is said that the mischief intended to be remedied by the Act of 1834

was the conflict between the decisions of the Courts, both in England and this country, in interpreting the common law rule. Was not the mischief, rather, the unprovided condition of the subsequently married wife or after-born child, which condition presented a strong, equitable claim on their behalf for the protection of the law? There was no conflict of opinion as to whether it required both marriage *and* birth of a child to revoke a will, before the Act.

3. This Act remained in force until the adoption of the Code, when, as seemed to be conceded by counsel, it was superseded by section 2441, which makes subsequent marriage or birth a revocation, unless the will contain a provision in contemplation of such an event. But, so far as the issues involved in the present case are concerned, does not alter the Act of 1834. It is not by any means clear to my mind that this section, taken in connection with section 2438, does not indicate an intention on the part of the codifiers to adopt Lord Mansfield's rule of presumptive intention, and not that of tacit condition. Concede, however, that section 2441 adopts the rule as laid down in Marston and Fox, does it follow that the provision for the subsequent wife or child must appear *in the will?* The *words* of the section, taken literally, seem to require it. But is it a sound rule of construction to adhere so closely *in litera,* and entirely ignore the reason and spirit of the Act? Would any one hold that a will in execution of a power is revoked by subsequent marriage or birth under the section? And yet the *words* of the section make no exception. A will of a woman was revoked by her marriage, at common law, absolutely, without reference to provision in contemplation of the event; and yet a will made by her in execution of a power was not so revoked. Suppose the strict construction so insisted on by counsel for defendants in error had been applied to the Statute of Frauds, what would have become of the rule on which their whole case rests? The sixth section of that Act provides, " no devise in writing, of lands, tenements or hereditaments, or any

Deupree *et al. vs.* Deupree *et al.*

clause thereof, shall at any time be revocable otherwise than by some other will or codicil, in writing, or other writing declaring the same, by burning, cancelling, tearing or obliterating the same by the testator himself, or in his presence and by his directions and consent; but all devises and bequests of lands and tenements shall remain and continue in force until the same be burnt, cancelled, torn or obliterated by the testator, or his direction, in manner aforesaid, or unless the same be altered by some other will or codicil, in writing, or other writing of the devisor, signed in the presence of three or four witnesses, declaring the same, any former law or usage to the contrary notwithstanding." This section not only points out the specific modes in which a will may be revoked, (among which subsequent marriage and birth of issue are *not* mentioned) but declares that all wills "shall remain and continue in force" until revoked as therein pointed out, and yet the Courts have held, in the teeth of the words of this statute, that marriage and birth of issue revoke a will. Is it not safe to adhere to a uniform rule of construction in interpreting statutes *in pari materia?* Can any reason be given why the provision for the future wife and child should appear in the will? Counsel have failed to point out any, other than such is the letter of the statute. They have shown good reasons why the rule, as laid down in Marston and Fox, should be preferred to that of Lord Mansfield. And without being altogether satisfied that our Legislature did not intend to adopt Lord Mansfield's rule, I have assumed that our law annexes a tacit condition of revocation to a will on subsequent marriage of, or birth of issue to the testator, where the future wife or child is not provided for. But I have failed to perceive that our law, unlike the common law rule, requires the provision to be made in the will, and only there. Again, Code, 1767, requires all marriage settlements to be liberally construed to give effect to the intention of the parties. If we hold this will revoked, we render of none effect the provision made in the settlement for

the after-born children, for that depends on the validity of the will.  So that we destroy a provision made for after-born children by a rigid and literal construction of an Act which was intended to secure provision for them.   This anomaly should be avoided if possible.   The fact that no after-born children sprang from the marriage under consideration, cannot alter the principle.   Suppose instead of owning the property, the testator had had a life-interest, with power of disposition by will, and remainder in the children by his first marriage, if he died without exercising the power.   Having made his will, and then by marriage settlement provided for his subsequently married wife, and opened the will in favor of the possible issue of the last marriage, so as to put them upon an equal footing with his other children under the will, he might well have reposed in the belief that he had fully provided for all his children, had issue sprung from the last marriage.   And yet, the construction now put upon the Act would, in the case supposed, defeat the plain and obvious intention of the Legislature, and so distort the statute as to deprive those of the benefit of it for whose sole advantage it was passed.   Nay, more, the statute becomes a sword to pierce instead of a shield to protect.

4. Hence, I dissent from the views of the majority of the Court on this point, and believe a provision by marriage settlement for the future wife and after-born children is a compliance with the condition annexed by law to the making of a will, and prevents revocation.

5. That presumption of proper execution of a will arises from the signature of the testator, and the fact of attestation by the witnesses, without reference to what may be recited in the attestation clause, where the witnesses do not distinctly remember, see Hand *vs.* James, 2 Comyn, 531 ; Croft *vs.* Poullet, 2 Strange, 1109 ; Boyse *vs.* Smith, 1 Willis, 1 ; 10 Leigh (Virginia Reports), 22 ; Redfield on Wills, 238, note.

Deupree *et al. vs.* Deupree *et al.*

WARNER, Chief Justice, dissenting.

On the 27th of June, 1853, Lewis J. Deupree made his will, and, on the 8th of September, 1859, he made a codicil thereto. On the 24th of May, 1864, he married Lucy Y. Peebles. Prior to said marriage, an ante-nuptial contract was made between the parties, securing to his intended wife all the property she then had, and settling upon her the sum of $10,000 ; in consideration of which, it was covenanted and agreed that the will of said Deupree should stand, and that she would not caveat the same, and provided also that if any children should be born after said marriage that they should take an equal share under his will with his other children named therein. The will, codicil and deed of marriage settlement were all propounded for probate, as the last will and testament of the testator, to which the widow and children of Deupree by a former marriage filed their caveat on the ground that the original will and codicil were revoked by the subsequent marriage of the testator, and that the paper offered as a testamentary paper, dated the 24th of May, 1864, was not attested and subscribed by the witnesses thereto *in the presence of the testator*, and therefore could not operate as a will. On the trial of the case, the jury found a verdict in favor of the caveators, and that Deupree died intestate. Exceptions were taken to the rulings and charge of the Court, upon several grounds, which are assigned as error here: First, the refusal of the Court to continue the case. Second, that one of the interrogatories put to the witness Dorah Atkinson was not fully answered. Third, that Mrs. Deupree was not a competent witness. Fourth, that the Court erred in charging the jury as to the legal effect of the attestation clause to the paper dated the 24th of May, 1864, and in the general charge as to the law in regard to the revocation of the testator's will.

The motion for continuance was properly overruled by the Court. The witnesses did not reside in the county in which

the trial was had, and, under the general law of the State, were not compelled to attend the Court in another county. If the propounders of the will had desired to attach the original will of the testator to interrogatories to be exhibited to the witnesses, the Court, on a proper showing, would have granted an order for that purpose, as is the usual practice of the Courts, when it becomes necessary to prove the *factum* of a deed, or other instrument, filing a copy thereof in the Clerk's office : Code, sections 3748, 3471, 2394, 3821, 3480. The interrogatory put to Mrs. Dorah Atkinson was substantially answered by her : Mott *vs.* Hall, Maer & Company, 41 Georgia Reports, 117. Mrs. Deupree was a competent witness : Brown and wife *vs.* Carroll, 36 Georgia Reports, 568. The law requires that a will should be attested and subscribed by at least three witnesses, in *the presence of the testator*, and the question made on the trial was, whether the paper writing, dated 24th May, 1864, propounded as a will, had been attested and subscribed by the witnesses, in the presence of the testator, so as to make it a valid will. The attestation clause to the paper recited that it was signed, sealed and delivered in the presence of the three witnesses, but did not recite that it was attested and subscribed by them *in the presence of the testator*. If the attestation clause had so recited, then the legal presumption would have been that it was attested and subscribed by the witnesses, in the presence of the testator, in the absence of any evidence to the contrary thereof. The point in the case was not whether the testator signed, sealed and delivered the paper in the presence of *the witnesses*, but did the three witnesses attest and subscribe the same *in the presence of the testator;* the attestation clause does not recite that they did, and, therefore, the attestation clause furnishes no legal presumption as to *that fact*, and there was no error in the charge of the Court, in relation to that point in the case, of which the propounders of the paper have any legal right to complain. The attestation clause does not recite that the witnesses attested and subscribed the paper *in the presence*

*of the testator*, so as to raise the legal presumption therefrom that they did, which was the material fact to be established, either by presumption or affirmative evidence.    The evidence in the record upon that point in the case fully sustains the verdict and rebuts the legal presumption contended for, if there had been any foundation for it in the attestation clause, as claimed by the propounders of the paper.    The evidence in the record upon that point in the case was such as to *require* the verdict which the jury found, setting aside the paper writing propounded as a will, dated 24th May, 1864.    That paper being out of the way as a will, the next question to be considered is, whether L. J. Deupree died intestate, according to the laws of this State; in other words, whether his will, made prior to his marriage, was *revoked*.    There is no provision made in the will of the testator in contemplation of such an event.    The 2441st section of the Code declares, that, "in *all cases*, the marriage of the testator, or the birth of a child to him, subsequent to the making of a will, in which no provision is made in contemplation of such an event, *shall be a revocation of the will."*

But it is said that it was not the intention of the testator in this case to revoke his will; that is undoubtedly so, and the question is, which is to control *the intention* of the testator or the *public law of the State?*   There can be no doubt as to the plain meaning and intent of the law, and when the intention of the testator is in conflict with the law, that intention must yield to the stern mandate of the law.    The 2437th and 2438th sections of the Code relate to *the acts* of the testator himself, and as to what was his intention in the performance of those acts in regard to the revocation of his will.    The *acts of a testator* in regard to the revocation of his will and what was his *intention* in the performance of those acts is one thing; the declared will of the supreme power of the State as to what shall constitute the revocation of a testator's will, is another and quite a different thing— the one is controlled by the testator's *intention*, the other is

controlled by the law of the State without any regard to the testator's intention. The *intention* of testators cannot override the law or repeal it.

In this case there are no children born subsequent to the marriage, and the widow is estopped by her ante-nuptial contract from claiming any part of the testator's estate in the event of a revocation of the will, but that does not alter the law. The children of the testator, born before making the will, his heirs, are not estopped from claiming the benefit of the law, and are now before the Court demanding its judgment, that an intestacy shall be declared in their favor, on the ground that the testator married after making his will, in which no provision is made in contemplation of such an event. The law is in their favor, and they are entitled to have it administered by the Courts and an intestacy declared in obedience to the requirements of that law : Holliman *et al. vs.* Copeland and wife, 10th Georgia Reports, 79. The law, as prescribed by the 2441st section of the Code in relation to the revocation of a testator's will, is a public law of the State, *an universal rule* that regulates the conduct of the whole community, including the testator as well as all other persons. It declared to him in plain, explicit terms, that if he made a will in which no provision was made, in contemplation of the event of a subsequent marriage, and after the making of such will, he should marry, that such marriage should be a *revocation* of his will. The testator could not alter or change this rule of law by his compact or agreement. " The language of a compact is, I will or will not do this ; that of a law is, thou shall or shall not do it :" 1 Bl. Com., 45. The design and object of all laws is to ascertain what is just, honorable and expedient, and when that is discovered by the law-making power, it is proclaimed as a general rule of conduct, equally binding and impartial to all. The Judges of the Courts are not " chartered libertines," to defeat and destroy the effect of a plain constitutional law by *construction* to suit their notions of expediency ; their duty

Deupree *et al. vs.* Deupree *et al.*

is to administer and enforce it, when its terms and meaning are clear and explicit.

The real question in this case is between the children of the testator by a former marriage, legatees under the will, who are caveators, and the propounders of the will. They allege that the will was revoked by the marriage of the testator subsequent to the making of the will, in which no provision was made in contemplation of such an event, and pray that an intestacy may be declared by the judgment of the Court. Have *they* the legal right to have the will of the testator revoked and an intestacy declared in their favor, under the public law of the State? That the will was made by the testator before his marriage with Mrs. Peebles is an undisputed fact; that no provision is made in that will in contemplation of such an event is also an undeniable fact. What is the law applicable to this statement of facts? The Code declares that, "In *all cases*, the marriage of the testator subsequent to the making of a will in which no provision is made in contemplation of such an event, *shall be a revocation of the will.*" But it is said this law was not intended for their benefit, but for the benefit of the wife, and children born of the second marriage. The reply is, that the law is general in its terms, and declares what shall be a revocation of a testator's will, and if the will is revoked by the commandment of the law, the children who are the legatees of the testator under that will may claim the benefit of that law if it is their interest to do so. It was the intention of the General Assembly in the enactment of the law to establish a fixed and definite rule in regard to the revocation of wills in case of marriage or the birth of a child subsequent to the making of a will by the testator, so as to avoid all future controversy in relation to that question.

The decisions of the Courts in England, and in this country, were conflicting as to the proper construction of the common law rule in relation to the revocation of wills by the subsequent marriage of the testator and birth of children.

That was *the mischief* which the Act of 1834, substantially embodied in the Code, was intended to remedy, and it is the duty of the Courts to enforce it so as to suppress the mischief and advance the remedy, and not to *perpetuate* the mischief by going behind the Act to find the proper rule of construction in such cases, when the Act plainly declares what the rule shall be.

The law does not interfere with the right of a testator to dispose of his property by will—it simply declares to him, that if he marries after making his will, in which no provision is made in contemplation of such an event, that will *shall be revoked*, and he must make another if he desires to dispose of his property by will. In other words, he must regulate his conduct in obedience to the public law of the State in relation to that matter.

The law, as prescribed by the Supreme power of the State, was a rule of conduct for this testator as well as all others, and he could not defeat its general operation by his compact or agreement, whatever may have been his intention. In my judgment, the children of the testator by his former marriage, his heirs, have the clear, undoubted legal right, under the public law of the State, to have the judgment of the Court in favor of a revocation of the testator's will, and that he died intestate, under the statement of facts disclosed in the record, and that the judgment of the Court below should be affirmed.

Judgment affirmed.