LEMUEL T. DOWNING, Ex'r, plaintiff in error vs. ANN BAIN and others, defendants in error.

[1.] A legacy of $4,000 to be paid in bonds is not a legacy that bears interest from the testator's death.

[2.] The jury is the Judge of the law, as well as of the fact.—BENNING J., DISSENTING.

Equity from Muscogee county. Decided by Judge WORRILL, May Term, 1857.

The original bill in this case was filed by Lemuel T. Downing, as Executor, under the last Will and Testament of Kenneth McKenzie, seeking the direction and construction of the Court upon the said Will.

The plaintiff (among other things) set out in his bill the 3d item of the will of Kenneth McKenzie, upon which the present question arose, and which was as follows : " Item 3d, I give and bequeath to the children begotten of the body of my beloved niece, Sophia McBride, and also the children begotten of the body of my beloved niece, Janett Bain, the amount or sum of $4,000 each, in bonds of the Companies above specified, and I will and ordain that the amount herein bequeathed to the children of niece Janett Bain, shall be chargable as a fund with the support and maintenance of said Janett Bain and her present husband during their natural lives ; and I further will and ordain that the amount bequeathed to the children of my niece, Sophia McBride, shall be kept free from the control, management or guardianship of the present husband of the last mentioned niece, or any future husband she may have."

The plaintiff also stated in his bill that under this item, Ann Bain, Kenneth Bain, Donald Bain, and Isabella Bain, all minor children of the said niece, Janett Bain, born during the lifetime of the testator, and Kenneth McBride, Margaret

McBride, Murdock McBride, Donald McBride, and Janett McBride, living at the death of the testator, and Roderick McBride, born since, on the 4th day of April, 1855, all minor children of the said niece Sophia McBride, claimed each to be entitled to the sum of $4,000, and also that it was claimed and insisted by the children and their parents, that not only were these children entitled, but that each and every other child that had been or should thereafter be begotten of either of the said nieces were or would be entitled to a like sum of $4,000 each.

That by the 14th item of the said will, the testator directed that the whole residue of his estate, whether consisting of real or personal property, not disposed of in any of the former bequests, should be a fund first chargeable with the payment of all his just debts, after which the residue should be divided into three equal shares or proportions—one third of said residue to be given to the City Council of Columbus, another third to be given to the Female Asylum of the said City of Columbus, and the remaining one-third to be given to his brother, Rory McKenzie.

That these residuary legatees, and particularly the two former, insisted and claimed that under the 3d item the testator intended to bequeath the sum of $4,000 to each only of the said two families, or sets of said children; $4,000 to the children considered as a class only of each niece, and not $4,000 to each child. And that they further insisted that even if the said children were entitled to take *per capita* then only the nine children born and living at the death of the testator were entitled each to its $4,000, and that neither Roderick McBride, born since, nor any other child born since or hereafter to be begotten of the said two nieces are, or will be entitled to any share under the will.

The Court was requested by the Counsel on the part of the Ladies' Education and Benevolent Society, and the Mayor and Council of the City of Columbus uniting, to charge the Jury "That if the Jury believe from the words of the will it was

the intention of the testator to confine the bequest of $4,000 in the 3d item of the will to each set of children, instead of each child, then they will so find in their verdict." This charge the Court refused to give, and the counsel excepted.

The same counsel then asked the Court also to charge, "That if the Jury believe it was the intention of the testator to confine his bequest to the children of his nieces then born, that they will then exclude, by·their verdict, the after born child." This charge the Court also refused to give, and the counsel excepted.

The Court then, among other charges, charged the Jury as follows: "That it was the province of the Court to give a legal construction to the words of the will of the testator, and that the Jury were bound to take the construction put upon the words of the will by the Court, and that according to the construction put upon the words of the will by the Court the testator intended by the words in the third item of the will to give $4,000 to each of the children of Janett Bain and Sophia McBride, born before the death of the testator, and that if the Jury believed that Roderick McBride, a child of Sophia McBride, was born within nine months after the death of the testator, then the said Roderick was also entitled to $4,000."

The Court also charged the Jury, " That the said children · of Janett Bain and Sophia McBride, legatees under the will, were entitled to interest on the amount of their legacies from the time of the death of the testator."

To both of these charges the counsel for the Ladies' Education and Benevolent Society, and for the Mayor and Council of the City of Columbus, then and there excepted.

The jury found by their verdict that each of the children of Janett Bain and Sophia McBride were entitled to $4,000, besides interest from the death of the testator, and that Roderick McBride, born since the death of the testator, was also entitled to $4,000, besides interest from the same time.

Counsel for the Ladies' Education and Benevolent Society, and for the Mayor and Council of the City of Columbus,

thereupon filed their bill of exceptions, assigning as error the charges so given by the Court to the jury, and the refusal of the Court to charge as requested.

JONES & JONES, for plaintiff in error.

BUCHANAN; TIDWELL; THOMAS and DENTON, *contra.*

*By the Court.*—BENNING J., delivering the opinion.

The Court told the jury that " the testator intended, by the words in the third item of the will, to give $4,000 to each of the children of Janett Bain and Sophia McBride." Is this what the testator intended? or did he intend to give $4,000 to the children of Janett Bain, collectively, and $4,000 to the children of Sophia McBride, collectively?

The question is a difficult one. "$4,000, each" *child,* is a somewhat more easy and natural reading, than "$4,000, each" *set of children.* This favors the interpretation adopted by the Court below. " The amount" (viz. $4,000) " herein bequeathed to the children of my niece," is a somewhat more easy and natural reading, than, "The amount," (viz., the *several sums* of $4,000 each) " herein bequeathed to the children of my niece." This favors the interpretation rejected by the Court below. There is, I think, very near a balance.

And where this is so, the decision ought, I think, to be for the side most favored by the law. And the law in distributing a man's property, puts his kin above strangers, however helpless and needy, and worthy the latter may be. It makes no provision for strangers. And with the law, in this respect, agrees nature.

We think that what the Court told the jury, as above stated, was right.

This also disposes of the first *request.*

The second request was abandoned.

The Court also told·the jury, that the legacies of $4,000, bore interest from the testator's death.

In this we think the Court was wrong. The legacies are *general.* They are of " $4,000," each; true they are to be paid in certain bonds, but then they are not of certain bonds. Calling on their face for $4,000, regardless of whether such bonds may be worth, over or under, $4,000.

See *Smith vs. Smith,* (at *Macon Term,* 1857.)

There must be a new trial, then, unless the interest be remitted.

There is another question in this case on which I differ with the other members of the Court. The Court below charged the jury, that " it was the province of the Court to give a legal construction to the words of the will of the testator, and that the jury were bound to take the construction put upon the words of the will by the Court." I do not think that the jury were so bound. I think that the jury are the judges of the law, as well as of the fact, in all cases. I will briefly state my reasons for this opinion.

The 88th section of the constitution of 1777, contains these words: " The jury shall be judges of law as well as of fact, and shall not be allowed to bring in a special verdict; but if all or any of the jury have any doubts concerning points of law, they shall apply to the bench, who shall, each of them, in rotation, give their opinion."

The 15th section had said, that the verdict of a special jury was a thing " from which there" should " be no appeal."

The 18th section is in these words: " The special jury shall be sworn to bring in a verdict according to law, and the opinion they entertain of the evidence; provided it be not repugnant to justice, equity, and conscience, and the rules and regulations contained in this Constitution of which they shall judge." *Watk. Dig.* 24.

As soon then as the constitution of 1777 was adopted, the jury became the judges of the law, as well as of the fact, if

they were not so, before; and the special jury, the judges
even of the *Constitution.* This must be indisputable.

Was there ever any charge made in this Constitution, in
this respect?

The 2d section of the third article of the Constitution of
1789, is in these words : " The General Assembly shall point
out the mode of correcting errors and appeals, which shall
extend so far as to empower the judges to direct a new trial
by jury within the county where the action originated, which
shall be final."

Here is a repeal of so much of the Constitution of 1777, as
made the verdict of a special jury, a thing from which there
could be no appeal; here is a grant to the Court of the pow-
er to give one new trial; here the Court is clothed with a
qualified *veto* on the power of the jury, over the law and the
fact. But it is only a qualified one, the power to judge of
the law, as well as of the fact, is not taken from the jury.

The 3d section of the 4th article, is in these words; "Free-
dom of the press and trial by jury shall remain inviolate."

" *Trial by jury*" must mean such trial by jury as was then
in existence. Subject to the change wrought in it, by the
said 2d section of the 3d article, and the trial by jury, then
in existence, was that established by the aforesaid sections of
the Constitution of 1777. No mere act of the legislature
could have changed it; but none was passed attempting to
change it.

On the adoption,t hen, of the Constitution of 1789, the jury
still remained the judges of the law, as well as of the fact.
This, I think, nobody can doubt.

Was there, afterwards, any further change made in the
aforesaid parts of the Constitution of 1777?

In the 1st section of the 3d article of the Constitution of
1789, it is declared, that the Superior Courts shall have pow-
er, " to order new trials on proper and legal grounds." Here
is given to the Court a general veto on the exercise of the
power over law and fact, granted to the jury, which is quite

an enlargement of the Court's former power. But there is nothing here, depriving the jury of their power to judge of the law, as well as of the fact.

The 5th section of the 4th article is in these words : "Freedom of the press and trial by jury, as heretofore used in this State shall remain inviolate."

What sort of jury trial was that, which was used before the time of the Constitution of 1798? That which was established by the Constitution of 1777, modified by the Constitution of 1789. There could have been no other. The legislature had no power to establish any other; they had not attempted to establish any other. But that was a sort in which, the jury were the judges of the law, as well as of the fact. This, then, was the sort that, by the Constitution of 1789, was to remain " inviolate."

On the adoption of the Constitution of 1789, then, the jury still remained the judges of the law as well as of the fact. This I think will not be denied.

Has there been any change, in this respect, since? None. The provisions aforesaid of the Constitution of 1798, remain untouched. No statute has been passed attempting to touch them. The legislature has not had the power to pass any mere statute touching them. It has not had any power to prevent jury trial, as used before the Constitution of 1789, from remaining " inviolate ;" and, therefore, it has not had the power to take away from the jury the right of judging the law, as well as the fact. The *extent of the power* of the jury, must be of the very essence of jury trial, and therefore, it cannot be, that jury trial can remain " inviolate," if this power to judge of the law, is abridged.

But no attempt by the legislature, has been made to abridge it.

Courts cannot make law; therefore, they are powerless to abridge it.

I say then that the law stands, as it stood on the adoption of the Constitution of 1798 ; and, that by the law as it stood

at that time, the jury were the judges of the law, as well as of the fact. Then they must be so still.

This is a conclusion which, it seems to me, is absolutely *necessary,* from the premises.

But indeed the same conclusion is to be drawn from the common law. *Every* body admits, that by the common law the jury have the right to bring in a general verdict.

Of *necessity,* then, they must have the right.to judge of the law, as well as of the fact.

That they have the right to judge of the law, as well as of the fact. Blackstone, Coke, Littleton, are all agreed. *3 Black. Com.* 378 ; *Coke Litt. Sec. 368, and Comments.*

These are my reasons for thinking the jury the judges of the law as well as of the fact.

Judgment modified.