JOHN A. URQUHART, plaintiff in error, *vs.* VIRGINIA A. OLIVER, defendant in error.

The act of 1866 and the constitution of 1868 made a sweeping and radical change in the *status* of married women in respect to rights of property. Prior to this change, separate estates depended generally on the express provisions of marriage settlements, wills and other conveyances; now they exist by virtue of the general law of the land, as a universal rule of property. The restrictions in the Code upon the testamentary power of married women are, therefore, no longer of force, or, at all events they are inapplicable to separate property acquired since the act of 1866. As to such property, the wife may make a valid will of realty or personalty without the consent of her husband.

Wills. Husband and wife. Before Judge JAMES JOHNSON. Muscogee Superior Court. May Term, 1875.

Reported in the opinion.

BLANDFORD & GARRARD, for plaintiff in error.

PEABODY & BRANNON, for defendant.

BLECKLEY, Judge.

A married woman made a will in September 1869, and died in 1873. Her husband gave no consent to the will; indeed, did not know of it till after her death. Upon its being propounded for probate, he entered his caveat on that ground, and supported it by proof. It appeared in evidence that the testatrix had been his wife for forty years, and had lived with him happily until her death. She died without children, leaving him her only heir-at-law. Her will specified no par-

Urquhart *vs.* Oliver.

ticular property, but disposed, in general terms, of her estate. Her husband was made residuary legatee; and the only other legacy was one of $5,000 00 to a niece of the testatrix. Her property, it seems, consisted of real estate of the probable value of $5,000 00, which she held by virtue of a deed from one Bozeman, dated in June, 1869. The deed was an ordinary conveyance to her, her heirs and assigns, in fee simple, with no creation of separate estate and no express power of disposition.

The question is whether her will was valid, the same having been made without the husband's consent; and its invalidity is put, by his counsel, upon the provisions of the Code, sections 2405 and 2410. Section 2405 is this: "Every person is entitled to make a will unless laboring under some disability of the law. This disability arises either from a want of capacity or a want of perfect liberty of action." Section 2410 reads thus: "Married women are incapable of making wills for want of perfect liberty of action, being presumed to be under the control of their husbands. A married woman may make a will in the following cases: 1st. Where express power to will her separate estate is reserved or granted to her in the instrument creating the same, or by marriage contract; 2d. When, having a separate estate absolutely, or an estate in expectancy, her husband consents to her disposing of the same by will; 3d. Where her will is in execution of a power vested in her; 4th. Whenever, by reason of the abandonment of her husband, or a divorce from bed and board, or for other cause, the law declares her to have the right of a *feme sole* as to her own earnings." In 36 *Georgia Reports*, 500, there was a construction of this last section in reference to the husband's consent. It was there said the consent was necessary only when the estate disposed of was one in expectancy. The decision of that question was not required for the case, which rested altogether on the previous law, the testatrix having died in 1851, long before the Code was adopted.

In dealing with the present case we proceed quite independently of any prior decision of this court upon the direct

question. And we observe that when the Code went into effect, the *general* rule of law was that married women enjoyed no rights of property; such rights, as to them, were special and exceptional; separate estates depended on the express provisions of marriage settlements, wills, and other conveyances. The Code was framed and enacted with reference to such a general law and such a public policy, as may be seen by reference to section 2410, above quoted. It speaks of the instrument creating the estate. Such instruments were then necessary, in most cases, for separate estates to have any existence. But a great and radical change has been introduced by the act of 1866, supplemented and confirmed by the constitution of 1868, the former of which provides (Code, section 1754,) that "all the property of the wife at the time of her marriage, whether real, personal, or *choses* in action, shall be and remain the separate property of the wife, and all property given to or acquired by the wife during coverture, shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default or contract of the husband." And the latter provides that "all · property of the wife in her possession at her marriage, and all property given to, inherited or acquired by her, shall remain her separate property and not be liable for the debts of her husband." The law of inheritance is also changed. By the act of 1871 the husband has ceased to be the sole heir of the wife when she dies intestate, leaving children or descendants of children : Code, section 2484.

A wholly new rule of property is thus introduced. With reference to all they own, women remain, after marriage, as effectually separated from men as they were before marriage. The husband has as little interest in, or control over, his wife's property as she has in or over his, indeed less, for she is entitled to be supported out of his, and when necessary is recognized by the law as his agent to charge it with her support; whereas, his power and control over her property, rests, in all cases, upon her voluntary consent. She is thus his full equal before the law in the ownership and control of property.

What reason, then, any longer exists why she should be degraded below him in the power of disposition, a power which the law annexes as an incident to full, complete and absolute ownership?   Even the right of sole inheritance has been taken away from the husband; and upon that right or the analogous one of taking by administration, rested chiefly, at common law, the husband's negative upon the wife's testament. Under the statutory provisions now of force he takes no greater interest in her property after her death than she takes in his after his death.   So far, therefore, as such an interest is concerned, there is the same reason for giving her a negative upon his will as for giving him a negative upon hers.   It is true that so much of the argument as rests upon the act of 1871, changing the rules of inheritance, does not apply directly to the particular will we are considering, if we regard the date of the will instead of the time when the testatrix died; but the latter date is the controlling one, for until then the will had no effect.   Even if that act were out of the way, our holding would be the same; for the fundamental change brought in by the act of 1866 is sufficient to abrogate, as general law, the restrictions imposed by the Code.   It may be that these restrictions are still in force with reference to estates depending upon instruments executed before the act of 1866 was passed; possibly they may be of force in relation to later instruments which expressly create separate estates and limit the disposing power over them.   But what we distinctly rule is, that a separate estate, arising by operation of law upon ordinary conveyances, or upon other means of acquiring property, is not amenable to the restrictions of the Code; and that, as to such estate, the wife enjoys a power of disposition by will independent of and free from the husband's consent or non-consent.

If, under the new order of things, the restrictive terms of the Code, with reference to the will of a married woman, still apply, why would not the restrictive terms in reference to contracts apply also?   Section 2730 of the Code declares that " the contracts of a married woman are generally void."   Is this

law since the act of 1866 ?   Are not the contracts of married women as universally valid as those of men, except in a few instances expressly prohibited ?    39 *Georgia Reports*, 41.

Thus far I have spoken for the court, and what I have said I understand to express the clear and decided conviction of my brethren; but I have, myself, very grave doubts as to the legal accuracy of the conclusion at which they have arrived.    I am not certain enough that I am right, and they wrong, to warrant me in dissenting from the judgment of the court; but my doubts are too strong for me to feel justified in concealing them, or in suppressing the reasons upon which they are founded.    By the ancient common law, and as it was construed down to the time of Blackstone, I think a married woman could not make a testament disposing of her own property without the consent of her husband, unless she did it in the execution of a power. Blackstone says: "In reality the woman makes no will at all, but only something like a will."    This he says in consequence of the rule that she had to act, in making a testament, altogether upon his license.    Married women were expressly excepted out of the statute of wills: 34 and 35 Hen. VIII. In 1789, was decided the case of Fettiplace *vs.* Gorges, 1 Vesey junior, 46, and in that it was held, that where personal property is given to a *feme covert*, to her sole and separate use, she may dispose of it by will without the assent of her husband.    This seems to have gained recognition as law: See 1st Williams on Executors, 46, 47; 2d Story's Equity, sec. 1388 to 1893.    Conceding it to have been law in Georgia prior to the Code, and conceding, also, that our general policy of putting realty and personalty upon the same footing would make it apply to both alike, yet it seems to me that the codifiers restored the strict common law rule, and for some reason which I cannot conjecture, subjected married women, in the matter of testamentary power, to a qualified control by their husbands.    The Code is very express; and I wholly reject the softening of it which was attempted in 36 *Georgia Reports*, 500.    My conviction is clear that a true reading would make the husband's consent as necessary for disposing of an

estate in possession as an estate in expectancy. It seems to me to be a very arbitrary distinction to qualify the latter part of the sentence and not the former. Allowing that the Code means what I think it does, is it repealed by the act of 1866, and the constitution of 1868? Repeals by implication are not favored. Neither the act nor the constitution undertakes, in direct terms, to treat of the powers of married women over their separate property. They simply increase the volume of the property; they add to its quantity; but does this addition involve augmented power? We refer to the act and the constitution to find out what is separate property; but should we refer to them to find out how that property may be transmitted? May there not be one law for the acquisition of estates, and another law for disposing of them? Are not the two separate and distinct matters? Married women could always, in England, hold land as separate property, and yet they were excluded from the English statute of wills. Possibly, with all the reform and progress which has been made in Georgia on this subject, it may have been thought by the legislature that it was going far enough to allow married women to retain all their property, use it as they please, sell it, trade on it at pleasure, without abrogating the old rule restraining them, in a qualified way, from disposing of it by will. If otherwise, why did they not change the Code expressly? I confess it seems more in harmony with our modern ideas, and with the advance step which has been taken, to do away with all restrictions. But what I look at is, they are left standing in the Code. To abide by the letter of the Code, and to hold that a husband can interfere with his wife's will, has the appearance of taking a step backward. It is turning round and looking toward the past. It may be over-conservative. I doubt, but do not dissent.

Judgment affirmed.