## McMichael *vs.* Pye *et al.*

1. By his will the testator bequeathed to his wife a large number of slaves, his plantation stock, farming tools an d utensils, household and kitchen furniture, horses, mules, cattle, etc., all of which property she was to have during her natural life or widowhood, and which, in the event of her intermarriage, was to be equally divided between the children of herself and the testator. After specific bequests to two of his sons, testator's will provided as follows: "And the remainder of my estate, both real and personal, to be equally divided between my children" (naming them). Prior to the execution of the will, a daughter of the testator died, leaving a child. The testator owned no other lands than those covered by the bequest to his wife:

*Held,* that it was the intention of the testator to dispose of his entire estate by his will, and it was not his purpose to die intestate as to any portion of his property.

2. On the death of the wife, the lands passed to the children of the testator, and the child of his deceased daughter took no interest therein.

January 26, 1886

Wills. Estates. Before Judge LAWSON. Jasper Superior Court. April Term, 1885.

Reported in the decision.

KEY & PRESTON, by J. H. LUMPKIN, for plaintiff in error.

F. JORDAN, for defendants.

HALL, Justice.

This case, which was a proceeding for partition of the lands belonging to the estate of Jordan Pye, late of Jasper county, by one claiming to be an heir at law against other heirs at law, was answered by the respondents, who denied that the petitioner had any right to or interest in the lands in question, for that the said Jordan Pye died testate, and by the provisions of his will, the lands were bequeathed to respondent. It was, by consent of parties, submitted to the presiding judge to be determined upon an agreed statement of facts. It was thereby admitted that the mother of petitioner, Edna Pye, before her marriage, was the daughter of the testator, and that she died prior to the execution of his will, leaving as her only child the said petitioner. By his will, Jordan Pye bequeathed to his wife a large number of slaves, his plantation, and plantation stock, farming tools and utensils, household and kitchen furniture, horses, mules, cattle, etc., all of which above named property she was to have during her natural life or widowhood, and which, in the event of her intermarriage, was to be equally divided between the children of her and the testator. After specific bequests to two of his sons, Charles A. and Burwell, he proceeds to dispose of the residue of his estate in these words:

"And the remainder of my estate, both real and personal, to be equally divided between my children, Edward H., Burwell J., John, Charles A., Nancy Ann and William F. Pye."

The judge, after reciting the admitted facts, submitted for his determination as above set forth, that the will of Jordan Pye was in evidence, and that he was the owner of no other lands than those covered by the bequest to Mrs. Pye, his wife, adjudged that the land sought to be partitioned, passed, under the will of Jordan Pye, to the respondents, and that William H. McMichael, the applicant for partition, took no interest in it, and therefore it was ordered that his petition be dismissed and the cost of the proceed-

ing be taxed against him. To this judgment the petitioner, McMichael, excepted, and brings the same to this court for review and reversal.

1. We think there can be no doubt that it was the intention of the testator to dispose of his entire estate by his will, and that it was not his purpose to die intestate as to any portion of his property. This, besides being in conformity to the general rule of law upon the subject, is apparent from the scope and object of the will, when its several items are construed together, which is the proper mode of dealing with it. *Dillard et al. vs Ellington*, 57 *Ga.*, 568, 569 (head-notes 15, 16, 17), 592, 593, is directly in point, and is decisive of this view.

2. It is conceded that an heir cannot be disinherited, except by express devise or necessary implication, and that the implication, to effect this, must amount to such a strong probability that an intention to the contrary cannot be supposed. In this case, it is admitted that the testator owned, at the time of executing his will and at his death, no other lands than those now in controversy. He gave his wife a life estate, or an estate during widowhood in these, and upon her intermarriage, he directed the property, of which she was tenant for life or during widowhood, to be divided between her children by him. True, he does not say in direct terms, if she does not marry, that at her death the property shall go to these children in equal portions, but from this provision, standing alone, it would be impossible to infer a different intent. But we are not driven to make any such inference, either as to the persons who are to be the recipients of his bounty, or as to the time they shall come into possession of the bequest. The residuary clause designates these persons by name, and demonstrates that he used the word children in its strict and proper sense, as contradistinguished from grand-children or other lineal descendants. The petitioner, as to this residue, is not mentioned by name, nor are any terms of description used from which it would be possible to im-

ply that the testator meant to include him among those who are taken as remaindermen under this residuary bequest. It would be impossible, without violating the plain intent and express words of the testator, to raise an estate for him by implication, and this must appear upon a consideration and examination of the entire will, and not from its detached parts. Wherever the estate is devised over to persons named, the intention to disinherit the heir then becomes manifest. *Wright vs. Hicks*, 12 *Ga.*, 156 (head-notes 6 to 11, inclusive), 163, 164, 165. The circumstances surrounding the testator when he made this will in reference to any provision made for the mother of petitioner upon her marriage are not disclosed by this record. It may be true, from aught that appears to the contrary, that she was then advanced, and from the manifestly just provisions of the will, in regard to others having claims upon the bounty of this testator, it would perhaps be only just to his memory to conclude that such was the case. But be this as it may, we would not be authorized, by indulging a conjecture to the contrary, to interfere with his scheme of disposition. His *sic volo, sic jubeo, stat pro ratione voluntas* is all to which we can look in interpreting and determining the meaning of his testament, provided only that it is free from ambiguity or obscurity and violates no rule of law.

Judgment affirmed.