## ELLIS *v*. DARDEN.

1. Under the code of Georgia the marriage of a woman revokes a will previously executed by her in which no provision is made in contemplation of such an event.
2. Parol evidence is not admissible to show that the will was executed in contemplation of the marriage.

December 23, 1890.

Wills.  Married women.  Evidence.  Before Judge LUMPKIN.  Taliaferro superior court.  August term, 1890

This case was submitted to the presiding judge, upon appeal from the court of ordinary, upon the following agreed statement of facts: Louisa Williams, on the first day of January, 1885, duly executed her will, devising all her property to her sister, Mrs. Kent, now Mrs. Ellis.  Testatrix signed the will with her maiden name.  On the same day the will was executed, and a few hours

after its execution she married one Darden.   About
five years afterwards she died, leaving her sister and
her husband surviving her.   Her sister offered the will
for probate, and her husband filed his caveat, contending
that the marriage of the testatrix to him revoked her
will.   He had no knowledge of the will until after his.
wife's death.

The propounder offered to show by parol testimony
that the will was executed by testatrix in contempla-
tion of her said marriage.   The judge held that the
paper propounded was not the valid last will of the
deceased, because it was revoked by her marriage with
Darden after it was executed ; and he declared an in-
testacy of her estate.   He also held that parol testimony
would not be admissible to show that the will was exe-
cuted in contemplation of the marriage.   To these
rulings the propounder excepted.

H. T. LEWIS and H. M. HOLDEN, for plaintiff.

JAMES WHITEHEAD and M. Z. ANDREWS, by brief, for
defendant.

BLECKLEY, Chief Justice.

1. In construing the code it is necessary to bear in
mind section 4, which declares that " the masculine gen-
der shall include the feminine."   Nothing can be more
manifest than that this rule was intended to apply to
the provisions of the code on the subject of wills.
These provisions are very ample and extensive, begin-
ning with the definition of a will, and embracing the
persons capable or incapable of making them, modes
of execution, revocation and probate, the property sub-
ject to disposition, the different classes of devises and
legacies, the office and functions of executors, etc., etc.
Code, §§2394–2482.   From the first to the last of these
sections, with few if any exceptions, the masculine in-
cludes the feminine.   This is obviously so in the very
v 86-24

first of them, which defines a will to be "the legal expression of a man's wishes as to the disposition of his property after his death." It cannot be doubted that in many of the sections the word "testator" includes testatrix. As to most of the sections in which the word occurs no other construction is possible. See sections 2398, 2400, 2401, 2407, 2413, 2414, 2418, 2420, 2421, 2422, 2479, 2480. Section 2477 reads as follows : "In all cases the marriage of the testator, or the birth of a child to him, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." We can have no reasonable doubt that the rule that the masculine includes the feminine, applies to this section as well as to so many others touching the subject of wills, and consequently that in sense and meaning, it has the same scope as if it read thus : "In all cases the marriage of the testator or testatrix, or the birth of a child to him or her, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." This construction only treats the codifiers as governing themselves consistently by their own rule in doing their own work. They undertook to state in a condensed form the law of wills, and they devoted an article consisting of nine sections to the subject of revocation. Can it reasonably be supposed that they intended to be silent upon the effect of marriage on the prior will of a woman ? And yet they were silent on that topic unless they dealt with it in the broad general language which we have quoted from section 2477. It is well-known that in hundreds of instances the codifiers did not confine themselves to stating the law as they found it, but that they exercised the function of unifying and harmonizing its various rules and provisions so as to present what they deemed a more consistent and complete system. Their work

as a whole has been adopted by competent authority, and except where altered or repealed, is now the law of the land.   We have only to accept it as written and interpret it by a rule found in the instrument itself to arrive at the conclusion that marriage has, in this State, at least as much effect upon a woman's will as upon a man's.   There may be more or less reason why revocation should be the result in the one case than in the other, but certainly there is reason enough in either case:   At common law the woman's will was revoked but the man's was not.   The act of 1834 put a man's will, in this respect, upon the footing of a woman's, with an implied saving in favor of wills in which provision was made for the prospective wife.   It also made the birth of a child operate as a revocation of any prior will in which the child was not provided for.   Then came the code, in 1863, and after varying the phraseology of the act of 1834 so as to make it wider and more general, incorporated its principle of revocation into the legal system of wills, with an implied saving in favor of wills in which, not the wife or the child, but the event of marriage or the birth of a child was provided for.   This implied saving might not hold good as to the wills of women because of other provisions of the code ; but that would not hinder the express declaration that marriage or the birth of a child subsequent to the making of a will in which no provision is made in contemplation of such an event, shall operate as a revocation of the will, from having its full affirmative effect upon every will of that class, whether the maker were male or female.   It may admit of question whether the code, taken as a whole, intended to save any will whatsoever made by a single woman from revocation by marriage, but this doubt need not affect our construction of section 2477 as to the class of wills which make no provision in contemplation of marriage.   Wills of this

kind are expressly declared to be revoked by marriage, though wills of a different kind may or may not be so revoked, according to their standing in the light of other provisions of the code and the general scheme of testamentary law. We can be sure, at any rate, that the code nowhere declares that the will of a woman is not revoked by marriage or by the birth of a child. Thus, no contradiction is involved in our construction of section 2477; and any apparent inconsistency with other provisions of the code which it involves touches a class of wills not now under consideration. Nor did any repeal or modification of the section result from the enlarged testamentary capacity and powers of married women, brought into the law by the act of 1866 and the constitution of 1868 as expounded by this court in the case of *Urquhart* v. *Oliver,* 56 *Ga.* 344. If marriage or the birth of a child would work the revocation of a particular class of wills by express statute, when the testamentary powers of a married woman were restricted, we see no reason why such an event should not produce the same effect after those restrictions were removed. Surely marriage or the birth of a child is as great an event in the life of a woman as of a man, and imports as important a change in the testamentary standpoint. It would seem that the more the testamentary powers of the two sexes are equalized, the more reasonable it would be to apply to both alike the provisions of section 2477 of the code. It is a mistake to suppose that this provision, as applied to men, has, or ever had, any purpose to coerce them into the performance of any legal duty which they owe to their families. A man may bequeath his entire estate to strangers. Code, §2399. All legal rights of the wife and family, such as dower and year's support, are as secure against a will made at one time as at another. The object of the provision is to secure a specific moral

influence upon the testamentary act—the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme. A public policy which rejects the will of a prospective husband or father because it affords no evidence of the presence of this influence, may well reject that of a prospective wife or mother for the same reason. Both are alike free from any legal obligation to provide by will for spouse or child, and both, as a general rule, are equally under the sway of moral motives so to do when these claimants, existing or anticipated, are thought of and their claims duly considered. There is as much reason in requiring one as the other to furnish evidence in the will itself that the testamentary act was performed with the future event of marriage or birth of a child in actual and present contemplation. Now that women, according to the decision in *Urquhart* v. *Oliver*, *supra*, have substantially the same testamentary freedom as men, the wills of both sexes, whether made before or after marriage, ought to stand on the same footing. It was only on the doctrine of implied repeal of certain statutory restrictions in the code that this court could arrive at the conclusion announced in *Urquhart* v. *Oliver*. But that conclusion does not require for its completeness or its consistency that section 2477 shall be held not to apply to wills made by women, or that a woman's will should stand on a higher plane than that of a man. On the contrary, the harmony of the whole testamentary system will be better preserved by treating the wills of both sexes alike. When a woman's rights touching the disposition of property are those of a man, her disabilities should also be those of a man.

Basing our decision solely on the statutory system of this State, we rule that the will now before us was revoked by the subsequent marriage of the testatrix,

though it occurred on the same day and within a few hours after the will was executed. A copy of the will is not before us, but we take it for granted, from the argument and from the recitals in the record, that the sole beneficiary under the will was a sister of the testatrix, and that the instrument contained no provision showing that it was made in contemplation of marriage.

How the general question has been treated elsewhere under various shades of statutory provisions will appear from the following authorities: Loomis v. Loomis, 51 Barb. 257; Brown v. Clark, 77 N. Y. 369; Fransen's Will, 26 Pa. St. 202; Swan v. Hammond, 138 Mass. 45, s. c. 52 Am. Rep. 255; Nutt v. Norton, 142 Mass. 243; Miller v. Phillips, 9 R. I. 141; McAnulty v. McAnulty (Ill.), 11 N. E. Rep. 397; In re Tuller, 79 Ill. 99, s. c. 22 Am. Rep. 164; Noyes v. Southworth, 55 Mich. 173, s. c. 54 Am. Rep. 359; Morton v. Onion, 45 Vt. 145; Carey's Will, 49 Vt. 236; Ward's Will, 70 Wis. 251, s. c. 5 Am. St. Rep. 174; Webb v. Jones, 36 N. J. Eq. 163; Fellows v. Allen, 60 N. H. 439, s. c. 49 Am. Rep. 328; Emery, App't, in re Hunt's Will, 81 Me. 275. See also, Beach on Wills, §64; 6 Lawson, Rights, Rem. & Pr. §3285; 80 Am. Dec. 516, notes to Young's Appeal; 1 Jarman on Wills (5th Am. Ed.), p. 268 et seq.; 3 Id. p. 783, n. 19; Schouler on Wills, §424; 3 Washburne on Real Prop. 575, side p. 698; 1 Woerner's Amer. Law of Admin., p. 107.

2. The parol evidence offered to show that the will was executed in contemplation of the marriage was properly rejected. In order to save a will from revocation by subsequent marriage the will itself must contain the requisite evidence that the event was contemplated. At least, such evidence must appear on the face of some document offered for probate as a part of the will. *Deupree* v. *Deupree*, 45 *Ga.* 415. *Judgment affirmed.*