SUTTON *et al. v.* HANCOCK, executrix.

115  857]
s118  438]

A testator having children at the date of his will gave to his wife in fee simple all of his property, real and personal, stating in the will that this disposition of his property was made because he knew his wife would protect his name by the prompt payment of his debts, "and that she will take every care of our children and do what is just and right by each of them." Subsequently to the execution of the will a child was born to the testator and his wife. *Held*, that the birth of the child revoked the will, there being therein no provision "made in contemplation of such event."

Submitted May 1, — Decided July 18, 1902.

Appeal. Before Judge Lumpkin. Fulton superior court. November 19, 1901.

*Spencer R. Atkinson* and *J. A. Perry,* for plaintiffs. *Anderson, Anderson & Thomas* and *W. O. Wilson,* for defendant.

COBB, J. On June 19, 1880, Joseph Smith made a will in which he provided, among other things, as follows: "I give, bequeath, and devise to my beloved wife, Lilly May Smith, all my estate, real and personal, in possession, reversion, or remainder, to be hers in fee simple forever, knowing full well that she will protect my name by the prompt payment of my just debts, and that she will take every care of our children, and do what is just and right by each of them. I therefore name her as well my sole executrix as my sole devisee and legatee." On January 6, 1886, the testator added a codicil to this will, relieving his wife of the necessity of giving bond and making returns, and empowering her to sell, in any way she saw proper, any or all of the property devised, giving her as complete control over the property as the testator had while in life. At the time the will was made the testator had several children then in life. Long after the execution of the will and the codicil thereto, but before the death of the testator, another child was born to the testator and his wife, who was in life at the date of the testator's death, which occurred on October 5, 1890. The only question involved in the present case is whether the birth of this child had the effect of revoking the will.

Under the common law neither the subsequent marriage alone of a testator, nor the subsequent birth of a child to him, operated as a revocation of a will previously made by him; but both of these events combined did have such effect. 1 Jarm. Wills, 271; 1

Under. Wills, § 239; Page, Wills, §§ 282-3, 287; Pritch. Wills, § 292. The Roman law did, however, provide that the subsequent birth of a child should alone operate as a revocation of a will. 1 Under. Wills, § 240. The common law was of force in Georgia until 1834, when an act was passed which provided that, "In all cases where a person, after having made a will, shall marry, or have born a child or children, and no provision shall be made in said will for the wife after married, or child or children after born, and shall depart this life without revoking said will, or altering it subsequent to said after marriage, or subsequent to the birth of said after-born child or children, the justices of the inferior court of the county, while sitting as a court of ordinary, having jurisdiction of the case, shall pass an order declaring that such person died intestate, and his estate shall be distributed under the laws of this State regulating the distribution of intestates' estates." Prince's Dig. 254; Cobb's Dig. 347. This act remained of force until the adoption of the Code of 1863, in which was incorporated the following provision : " In all cases the marriage of the testator, or the birth of a child to him, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." Code of 1863, § 2445. This statute has, without any alteration whatever, been the law of this State from the Code of 1863 to the present time. See Civil Code, § 3347. It is important to ascertain what was the proper construction to be placed upon the act of 1834, and what change was intended to be made by the code section above quoted. The act of 1834 required the testator to make some positive, beneficial provision for an after-born child. So, in *Holloman* v. *Copeland,* 10 *Ga.* 79, it was ruled that where "no positive provision" was made for an unborn child, "the testator must be considered as having died intestate, notwithstanding such after-born child might be entitled to some portion of the testator's estate under the will, on the happening of certain contingencies mentioned therein, under the general description of ' children.' " Judge Warner in the opinion said : " The statute contemplates the present or probable existence of the after-born child in the mind of the testator when he makes his will, and thereby makes a *positive provision* for such child." It will thus be seen that under the act of 1834, unless the testator, at the time of making his will, had in mind the probable or possible birth of a child

to him in the future, and unless, having this in mind, he made some positive beneficial provision for the child, the will would be revoked by the birth of a child to him subsequently to the execution of the will. The code changed this law so as to omit altogether the requirement that the testator should make at all events a positive provision for the child to be born, and it did not even require that the testator should have had in mind the child that would be born. The requirement of the code is that provision shall be made in contemplation *of the event.*

What is the meaning and object of this provision? We quote the following from the opinion of Mr. Chief Justice Bleckley in *Ellis* v. *Darden,* 86 *Ga.* 371, where it was ruled that the marriage of a woman revoked a will made by her in which no provision was made in contemplation of that event: "At common law the woman's will was revoked, but the man's was not. The act of 1834 put a man's will, in this respect, upon the footing of a woman's, with an implied saving in favor of wills in which provision was made for the prospective wife. It also made the birth of a child operate as a revocation of any prior will in which the child was not provided for. Then came the Code of 1863, and, after varying the phraseology of the act of 1834 so as to make it wider and more general, incorporated its principle of revocation into the legal system of wills, with an implied saving in favor of wills in which, not the wife or the child, but the event of marriage or the birth of a child was provided for." The learned Chief Justice further said, in referring to the code: "The object of the provision is to secure a specific moral influence upon the testamentary act — the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme." When, therefore, a person has made a will in this State and thereafter marries or has a child born to him, the will stands revoked upon the happening of either contingency, unless it appears that when the will was executed the testator had in contemplation the event of marriage or the birth of a child. And the evidence that the testator did have the event in contemplation must be in the will itself, taken in connection with the circumstances which existed at the time the will was executed; and this can be shown only by means of a provision in the will which appears to have been made in contemplation

of the event. There can be no question that this is the plain meaning of the statute. It makes the subsequent birth of a child operate as a revocation of a will, with the sole exception that a revocation will not result when "provision is made in the will in contemplation of such event." Hence, it was held in *Ellis* v. *Darden*, supra, that parol evidence was inadmissible to show that a will was executed in contemplation of marriage. The question whether the testator had in contemplation the event which subsequently took place is a matter of legal inference, or a presumption of law from the language of the will and the circumstances existing at the time of its execution. It is not a question as to what was the testator's intention, save as that intention can be gathered from the sources above indicated.

In the *Deupree* will case, 45 *Ga.* 415, the majority of the court held that " The marriage of a testator or the birth of a child to him subsequent to the making of a will, in which no provision is made in contemplation of such an event, is, by presumption of law, a revocation of the will," which presumption could not be rebutted by extraneous evidence. Judge McCay stated his views as follows: " The revocation is, by these words, made to turn, not upon any provision made *for* the wife or child, but upon whether the testator *by his will* has made provision *for such an event.* If by his will he has done so, the will is not revoked ; if he has not, it is revoked. It is immaterial whether this provision for the *event* is a provision for the benefit of the wife or child or not; it is enough if it is for the event. *If the provisions* of the will meet the requirements of the statute, it is not revoked ; if *they* do not, it is revoked. Whether the wife or child is provided for in some other way has *nothing* to do with it; the law by its express, positive terms makes it turn upon the provisions of the will. The only questions to be asked are: 1st, Was the marriage or birth subsequent to the making of the will ? 2nd, Does the will make a provision for the *event* ? If the first question must be answered in the affirmative and the second in the negative, the will must stand revoked, unless the court has power to say that it will alter or modify the law to meet a case that it may think a hard one." Judge Warner, while dissenting from the judgment of reversal entered in that case, took the same view of this question as Judge McCay did. He said: " The *acts of a testator* in regard to the revocation of his will and what was

his *intention* in the performance of those acts is one thing; the declared will of the supreme power of the State as to what shall constitute the revocation of a testator's will is another and quite a different thing; the one is controlled by the testator's *intention*, the other is controlled by the law of the State without any regard to the testator's intention.　The *intention* of testators can not override the law or repeal it."　Mr. Schouler says that under the common law the question of revocation by the subsequent marriage and birth of a child was "one of legal inference, independently altogether of what the party himself might have intended."　Schoul. Wills (3d ed.), § 425.　The ecclesiastical courts seem to have held otherwise, but the author last cited says that, so far as the American statutes on the subject are concerned, resort must be had to the peculiar wording of each statute to ascertain which of the above-mentioned rules of construction is applicable.　See § 426.　Mr. Page says the law annexed a condition in such a case that the will would be revoked.　Page, Wills, § 283, p. 323.　See also Pritch. Wills, § 293.

Keeping these rules in mind, it will be seen that there is nothing in the will involved in the present case, or, so far as the record discloses, in the will taken in connection with the circumstances existing at the time of its execution, which shows that the testator had in mind the event of the future birth of a child or made any provision in contemplation of that event.　There were, at the time the will was made, children of the testator then in life; and therefore the case is wholly different from that of *Freeman* v. *Layton,* 41 *Ga.* 58, where a testator, who had no children, provided in his will that if he should die leaving a child or children, his property was to be equally divided between them if there was more than one, or given to one if there was only one.　In that case it was held that the will was not revoked.　It was argued that the child born subsequently to the making of the will involved in the present case would fall within the general class designated in the will by the word "children," and that as the testator evidently manifested an intention to disinherit his children then in life, the child subsequently born would also be disinherited; that unless a contrary intention be shown, the word "children," appearing in a will, refers to the children living at the death of the testator.　Counsel for the defendant in error rested their argument mainly upon the proposition

just above stated. The general rule undoubtedly is, that where a bequest or devise is made in a will to "children," the word refers to those living at the date of the death of the testator. But it does not follow that an unborn child could be disinherited by the mere use of the general word children. "An heir can not be disinherited except by express devise or necessary implication, and the implication to effect this must amount to such a strong probability that an intention to the contrary can not be supposed." *McMichael* v. *Pye,* 75 *Ga.* 191. See also *Wilder* v. *Holland,* 102 *Ga.* 45, and cases cited. Mr. Underhill says: "But our law, while it permits the father to disinherit his child altogether without looking closely into the reasons which prompted him, protects the interests of a child *born subsequent to the execution of the will,* and who is not mentioned in it, upon the very reasonable assumption that the silence of the parent as to a testamentary provision for that child was the result of accident or inadvertence, and not of a deliberate intention to disinherit one against whom, at least when the will was made, the testator could have had no reason to discriminate." 1 Under. Wills, § 240, p. 328. See also § 242. See also, in this connection, Page, Wills, § 292. In re Stevens' Est. (Cal.), 23 Pac. 379; Barnes *v.* Barker (Wash.), 31 Pac. 976; Lurie *v.* Radnitzer (Ill.), 46 N. E. 1116. It is, however, unnecessary to pursue this line of argument further, or to enter upon a consideration of the question whether the language of the will involved in the present case might not create a precatory trust for the benefit of all the children of the testator living at his death.

Whatever opinion may be entertained upon either of the foregoing propositions, it would not, in our judgment, affect the conclusion which we have reached that the will was revoked. Even under the act of 1834, which required that some positive beneficial provision should be made for the child, it was held that the fact that the after-born child might, upon the happening of certain contingencies, take a beneficial interest in the estate, under the general description of children used in the will, would not constitute such a provision for the child as was contemplated by the statute. *Holloman* v. *Copeland,* 10 *Ga.* 79. Much less could a general expression in a will which operated to disinherit all the children of the testator living at his death be said to indicate that provision was made in the will in contemplation of the event of the birth of a

child which came into being long after the will was made. It
makes no difference that under the rules of law the after-born child
may be comprehended within some general term used in the will,
whether that term was intended to provide a beneficial interest for
it in the testator's estate, or whether it was intended to disinherit
the child altogether. The law is clear and explicit. The will must
show that the testator had in contemplation the *event*, that is to
say, the probable or possible future birth of a child, and must have
made some provision in the will in contemplation of such event.
Not that this provision must be of a beneficial interest in the testa-
tor's property, but the will must refer to the contingent event in some
way and provide for it, either by unequivocally making a beneficial
provision for the child or by disinheriting it altogether in such clear
and unmistakable terms as to leave no doubt that the testator had
the *event* in mind. The law intends that the probable or possible
contingent event shall be present in the testator's mind and exert-
ing a moral influence upon the testamentary scheme ; that he shall
carefully weigh the effect which such an event ought to have upon
the disposition to be made of his bounty ; and that he shall give
evidence in his will that he has considered the possible happening
of the event ; and the will must in clear and unmistakable terms con-
tain a provision which shows that it was made at a time when the
testator had the event in mind, and in contemplation of that event.
It is impossible to tell what influence the contemplation of such
an event as the future birth of a child would have had upon the
mind of the testator who signed the will upon the validity of which
we are now called upon to pass. It is altogether possible that it
might have altered the whole testamentary scheme by suggesting a
different train of thought. It may be that the contemplation of the
helpless condition of the infant might have suggested the propriety
of making some provision for it as well as for his other children.
Be this as it may, the case is not to be decided upon speculative in-
ferences, but upon the presumption which the law draws from the
will itself. The fact that the testator may have lived some time
after the birth of the child and failed to make any change in his will
can make no difference. The will was void immediately upon the
birth of the child, and nothing the testator might do or fail to do
could give it life. It was dead, as completely as if he had destroyed
it by burning or by any other means known to the law. We hold,

therefore, that the will of Joseph Smith was revoked by the birth of a child to him subsequently to the execution of that will, and that the court erred in deciding to the contrary.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*