## CHANDLER *et al. v.* CHANDLER.

The birth of a child to a testator subsequently to the making of a will in which no provision is made in contemplation of such an event, is a revocation of the will. Where. the explicit language of a will discloses a general testementary scheme to provide for the children of the testator as a class, and there is nothing in the will to indicate that this provision was intended to be limited to the children in life, the law will presume that the testator understood the legal meaning of the language employed, and intended the natural consequences of his act, and therefore that the will was made "in contemplation of such an event" as the subsequent birth of a child to him.

No. 145.  JANUARY 18, 1918.

Appeal from probate of will.  Before Judge Brand.  Banks superior court.  January 20, 1917.

This was a proceeding to probate the will of A. M. Chandler in solemn form.  A caveat was filed; and the issue was submitted to the court without the intervention of a jury, and his judgment was in favor of the propounder.  The facts are not in dispute. A. M. Chandler executed his will on November 21, 1885, and died on November 24, 1915.  On June 19, 1886, a child (now Mrs. Lillian Meadows) was born to A. M. Chandler.  The controlling question is whether the birth of this child revoked the will.  So much of the will as is material to the determination of this question is found in the following items:

"Item 2.  I desire, devise, and direct that at my death that all of the lands that I may die in possession of, without reference to locality or number of acres, be for the benefit, use, and maintenance of my wife, Luisa J. Chandler, and all of the minor children left with me at my death, subject to the following, to wit: the lands named to be worked or·rented especially for the support of my wife and the education of my minor children until the youngest of them becomes of age; then to be sold and equally divided between my wife and all my children.

36

"Item 3. I desire and direct that all of the personal property that I may have at my death to be used for the same purposes named in the second clause of this my last will, subject to the advancements made by me to my children in my lifetime, to wit: an itemized account of all advancements made so as to make them as near equal as possible as they become of age.

"Item 4. I desire and direct that all of my minor children be sent to school at the close of working the crops, until gathering time, until the boys become 18 years of age; then to be sent to school for two years; then set free to act for themselves; the girls to have horse instead of two years' schooling.

"Item 5. In the event of the death of my wife before the last one of my minor children becomes of age, the property named in the second and third clause of my will to remain the same until the last arrives of age, so that they may be supported and educated as directed by me in this my last will."

A book shown to have been kept by the testator and in his handwriting was put in evidence. On the book appears this sentence: "A list of the itemized accounts of the advancements made by A. M. Chandler to my children, their names being entered on the following pages." On the following pages appear the names of all his children, followed by the dates of birth and the amount of cash or personal property advanced to each. The name of Lillian Chandler appears in this list as one of testator's children, with the entry, "was born June 19, 1886;" and an advancement of $500 is charged to her. The widow of the testator was permitted to testify as follows: "Before my husband made his will he knew that I was with child. He talked with me about it." To this evidence counsel for the caveators objected upon the grounds that parol evidence of the intention of the testator is incompetent, and that such communications between husband and wife are inadmissible on the ground of public policy.

R. B. Russell and W. W. Stark, for plaintiffs in error.

W. A. Charters and H. H. Perry, contra.

GEORGE, J. (After stating the foregoing facts.) Under the Code of Georgia, the marriage of the testator, or the birth of a child to him, subsequently to the making of a will in which no provision is made in contemplation of such an event, is by presumption of law a revocation of the will. Hargroves v. Redd, 43 Ga.

142; *Deupree* v. *Deupree,* 45 *Ga.* 416. And this presumption can not be rebutted by declarations of the testator made either in parol or in writing, unless such declarations are testamentary in character, and "executed with the forms and solemnities required for making a will." *Deupree* v. *Deupree,* supra. This is so upon the true conception that every will has in it an implied condition that it will stand revoked upon the subsequent happening of either of such events, unless the will by its terms shows that it was made in contemplation of such an event. By our law it is not now necessary, as formerly, that the will make beneficial provision for the children subsequently born to the testator. It is sufficient if the will by its provisions shows that the testator had in contemplation the happening of such an event, or, to state it somewhat more accurately, if the provisions of the will were made in contemplation of such an event. If it appears from the will that the testator had consciously before his mind such an event at the time of the execution of the will, the will is not revoked by the subsequent birth of a child. *Ellis* v. *Darden,* 86 *Ga.* 371 (12 S. E. 652, 11 L. R. A. 51). In *Holloman* v. *Copeland,* 10 *Ga.* 79, it was ruled: "According to the provisions of the act of 1834, the testator must be considered as having died intestate, notwithstanding such afterborn child [in that case born two years after the execution of the will] might be entitled to some portion of the testator's estate under the will, on the happening of certain contingencies mentioned therein, under the general description of 'children.'" The act of 1834 required the testator to make some positive beneficial provision for an afterborn child. In *Sutton* v. *Hancock,* 115 *Ga.* 857 (42 S. E. 214), a testator, having children at the time of the execution of his will, gave to his wife all his estate, stating in his will that this disposition of his property was made because he knew that his wife would protect his name by making prompt payments of his debts, "and that she will take every care of our children, and do what is just and right by each of them." Subsequently to the execution of the will a child was born to the testator. It was held that "the birth of a child revoked the will, there being therein no provision 'made in contemplation of such event.'" The contention there made was, that, inasmuch as the testator had in effect disinherited his children as a class, the will contained a provision "made in contemplation of such

event as the subsequent birth of a child." This contention was rejected, and it was there said by Mr. Justice Cobb, arguendo, that if the testator had made a beneficial provision for his children, the will would nevertheless stand revoked. This did not amount to an authoritative ruling, and we think the language, or at least some of it, too broad when considered on the facts of the supposed case. Every presumption is in favor of the child, and he can not be disinherited except by express devise or by necessary and compelling implication. *McMichael* v. *Pye*, *75 Ga.* 191. Especially is there a strong presumption of the law that the testator did not intend to disinherit his child born subsequently to the execution of the will. An unborn child can not be disinherited by the mere use of the general word "children" in a will, while under the general rule a bequest or devise in a will to children as a class will enable any child in life at the date of the death of the testator to take under the will. The reason is that the testator intended, and manifested his intention by the language of the will, that all his children, born or to be born, and in life at the date of his death, should take under the devise. The unborn child can not be disinherited by the use of the general word "children," and the reason is that the testator did not so intend. By reference to the items of the will contained in the statement of facts, it is clear that all children of the testator take under the will, whether the children were in being at the date of the execution of the will or were subsequently born to the testator. In item 2 he provides that all his lands shall remain "for the benefit, use, and maintenance of my wife, Luisa J. Chandler, and all of the minor children left with me at my death," subject to certain conditions named therein; "then to be sold and equally divided between my wife and all my children." The reference to all the minor children of the testator, "left with me at my death," certainly indicates that the mind of the testator, at the time of the execution of the will, contemplated such an event as the subsequent birth of a child or children to him. In item 3 the testator refers to advancements to be made to his children in his lifetime, to be taken into account in the final division of his estate; and the book in the handwriting of the testator, showing that he had made advancements to his child Lillian (born subsequently to the making of the will), as well as to his children in life at the date

of the execution of the will, was put in evidence. This writing, in and of itself, would not prevent the revocation of the will, but it serves to show the scheme of the maker, as manifested by all the provisions of the will, to provide for all his children as a class, whether born or to be born. Further provisions of the will speak for themselves. The distinct testamentary scheme of the maker, as disclosed by the explicit language of the will, shows that he intended to and did in fact provide beneficially for his children as a class, born and to be born; and where, as in this case, a will discloses a general testamentary scheme to provide for all the children of the testator as a class, we think it must be said that the provisions of the will setting forth this general testamentary scheme were made "in contemplation of such an event" as the subsequent birth of a child. Every one is presumed to intend the natural consequences of his voluntary act. The natural and legal effect of the language employed by the testator was to provide for his children as a class, and he is presumed to have known the legal effect of such terms. The underlying reason, as pointed out above, why an afterborn child is enabled to take under a devise in a will to children as a class, is that the testator so intended. If the testator in this case so intended, and evidenced such intention by language the legal effect of which is understood by laymen as well as lawyers, by what rule of reason can it be said that the provisions made in his will, and the testamentary scheme there plainly disclosed, were not "made in contemplation of such an event" as the subsequent birth of this child?

It is to be noticed that the words of the statute are "made in contemplation of *such* an event," not "the event," or "the particular event." It will also be noticed that the afterborn child in this case was *en ventre sa mere* at the date of the execution of the will. For beneficial purposes she will be considered, both under our law and under the common law, as a child in being, and will take directly under the devise to children. *Morrow* v. *Scott, 7 Ga.* 535; *Downing* v. *Bain, 24 Ga.* 372.

The widow of the testator was permitted to testify to the effect that she talked with her husband before the execution of the will, and advised him that she was "with child"—the daughter thereafter born to testator and his wife. This evidence was objected to upon the grounds that the wife was incompetent to testify to

such facts, and that the intention of the testator can be gathered only from the provisions of the will itself. It does not appear that any direct ruling was made on the admissibility of this testimony by the court, to whom the case was submitted without the intervention of a jury; but the ruling made above makes it unnecessary for us to decide whether this testimony was or was not admissible.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*